The opinion of the court was delivered by
Duncan, J.
The dispute in this case was, whether the survey of T. West, Jr., returned by the regular deputy, in 1786, was an actual survey, or a paper one. When a survey is returned, it is always prima facie evidence that it was duly made, and it lies on the adverse party to disprove it. But, when a time analogous to the statute of limitations has run round — where the owner has continued to pay the public taxes, where 'there has been no caveat, it would seem to me worthy of all consideration, whether it ought not to be a presumption of law, conclusive of the fact, (the purchase money being paid into the public treasury,) that the survey purporting to have been made by the public officer, returned and received into the public office, the public recognizing it by assessment of taxes, the owner contributing to the support of government, was in fact made. It is so consistent with legal presumption, made for the sake of peace, in all cases of this nature, (as livery of seisin, the surrender of copyhold,) to give to the holder of that which he has paid for actual investiture, all the forms of an effective conveyance; and that, as it is good between the state, and the purchaser from the state, so it should bind those claiming under the state; as well where they claimed under pretence of settlement, as of subsequent office right.- This species of right certainly falls within the reason of the law, which gives to the bona fide holder of a legal or equitable right the protection of presumption of length of time, of the forms and ceremonies required byr law, to complete and perfect his title. It is on the ground of general convenience, public good, and security of titles, that the protection is extended to incorporeal rights — to payment and extinguishment of mortgages. It is as difficult for the owner to keep alive his marks on the ground, as it is impossible for him to keep alive the witnesses who made them. Time, the exterminator of all things, accident by tempest and by fire, may prostrate the best marked lines; and when to this is added the destructive hand of man, who is led into the strong temptation of rooting up the distant owner’s land marks, and thereby, by this accursed thing— of removing land marks — making himself the owner of the land; the reasons are very cogent in favour of this legal presumption. It is not required of the court now to decide this; and such a case has not heretofore come directly in judgment. At present, according to the spirit of all former decisions, it appears to me sufficient'evidence of a survey returned, an actual survey, to show that any part of it was made on the ground. The act of assembly, it was decided, in Woods v. Insersoll, was in this particular but *122 directory; for I hold it to be a good survey, if the surveyor marks so much on the ground as to enable him to close the survey from the adjoining surveys, natural boundaries, and his own personal knowledge, and the decision of the Supreme Court of the United, States, proceeds on the same principle. 4 Wheat. 598. And in Taylor v. Brown, 5 Cranch, 243, Chief Justice Marshall said, ££ If the omission to record the survey avoid it, then the omission of any other act enjoined by the same section of the act would render it equally void. The surveyor is directed to see the lands plainly bounded by natural boundaries, and marked trees. Has his omission to do this ever been inquired into, in a contest respecting the validity of a survey? Would any gentleman of the bar contend, that, because the land was not plainly bounded, that for that reason a survey actually made was void?”
On examining the propositions on which the counsel of the plaintiffs required the opinion of the court, they will be found to be substantially but two. The first was, whether there must not be at least one line applicable to the particular survey. The answer to this was very full, and very accurate. ££ There must have been lines on the ground, and there must be, or must have been one line applicable” to the survey in question, lines of old surveys, are equal to new lines; leaving to the jury, (and there was a view,} the faet of a survey on the ground.
The second'proposition, though branched into four inquiries, w7as, “ whether, when a surveyor in his return called for an old survey, as a boundary, it was necessary to prove that survey returned into the office,'” Evidence was given, that there were two ancient well made surveys in 1766; one in the name of Michael Braziel, the other in the name of Jacob Buck, which .were not returned, in which it seems ejectment had at one time been brought, but had, for some cause, been discontinued. Thus the question did not arise, whether the lines adopted had been the work of a regular deputy, with an order in his hands, or a mere private, unauthorized, unofficial act. But it arose on a w'ell marked line, an office right; and the learned judge gitfes such an answer to the proposition as was to be expected, from his great experience, and matured judgment, on questions of this nature. The owner of a warrant, bounded by such a survey, has nothing to do with the return.' It matters not to him why it was not returned, or why, if you please, it was abandoned. Any one at all conversant in the land titles of Pennsylvania, well knows, that there are numerous legal unquestioned surveys, made even so far back as 1766, that have not been returned to this day; owing sometimes to the fault of the deputy; sometimes to the default or negligence of the proprietor, in not paying the fees, or calling for the return. The question is not on the validity of the survey, its return, or abandonment, but whether de facto there was such a boundary on the ground, to which the surveyor might refer, with *123 out marking it anew, and adopt it in an adjoining survey. Most clearly he might, and the survey being found marked, would be sufficient. It is a matter of boundary, not of title; to prove which, even hearsay, after a great length of time, is admissible evidence. Most clearly, in such a case as this, he might adopt it as a boundary, without the useless labour of marking it again; which would tend to confound the first title, ■ and render it a matter of dispute afterwards, when the first survey was made; and 1 do not know that it would be lawful for the surveyor to make fresh marks on an ancient boundary. But one thing is very certain, it would be idle and unnecessary; and after so great alapseof time — nearly sixty years since these ancient surveys were made, the court would presume, for the purpose of boundary, they were made by legal authority. The charge throughout receives my entire approbation. It contains the soundest doctrine; and in a case circumstanced as this is, I have struggled to get over the exception^ as to the rejection of Daniel Turner’s deposition. I cannot See how the evidence of Joseph Shugart proved any fact to impugn the defendant’s survey. His right became fixed by the return; it was beyond his control. The warrant was functus officio; there was no order of re-survey. The employment of án assistant, to a deputy surveyor, to examine the ancient lines, and the irregular work of that surveyor, and his marking other lines, could not remove the warrant, or defeat the defendant’s right, fixed down to a particular spot, by the survey and return.
But this evidence of an experimental irregular line was read without opposition; and the defendant gave evidence, by William Wilson, how the line came to be run; that it was done by Turner, from an incorrect draught, and never located the old surveys. The plaintiff then cross-examined him; when he said, he did not know who employed Turner, or furnished the incorrect draught. This made way for the admission of Daniel Twiner’s deposition, which had been before so justly rejected, for the reasons given by the court. Indeed, such evidence was so unsatisfactory, vague, and rambling, that it ought never to have been read, to establish by itself any fact. Yet, as his name, the draught, and General Patton, as one of the owners, had been introduced, in one point of view it was admissible, to show that the work had been done under the direction of General Patton, and that he furnished the incorrect draught. If the plaintiffs had been called upon to state for what purpose it was-offered, and had shown it as evidence in chief, to substantiate a fact, and the court had overruled it, it would then have been properly overruled. For, when evidence is offered, the adverse party has a right to call on the other party, to know what it is intended as proof of; and if he states it, then it is to be tested by that statement, and if it is not evidence of that fact, though it might be evidence of some other matter, the rejection would be no cause to reverse a judgment. But this does not ap *124 pear; nor does the opinion of the court assign any reason for its rejection; but it appears to have been a general offer, and a general rejection. 4 Binn. 201, 335. Gordon v. The Lessee of Moore, 5 Binn. 138. I incline to think the court considered it but as a renewal of the application first made, to receive it as evidence in chief, which they had before so justly rejected. Had the counsel of the plaintiff stated the design with which it was then offered, I cannot think the counsel of the defendant would have objected to it, or the court sustained the objection. But nothing of this appears, either in the offer, or in the opinion of the court; and, therefore, being evidence for some purpose, it was admissible. No doubt, but Wilson and Turner spoke of the same line, and of the same transaction. It is for this reason alone the judgment is reversed, and reluctantly reversed; for I cannot yet discover how the line run by Turner could change the position of the survey, in the name of West. Yet, as both parties went into evidence of that line, Turner’s deposition was made evidence in consequence of the testimony given by Wilson, the defendant’s witness.
The court very properly rejected the survey of Adams, and of previous surveys, not made at the same time, nor in any manner connected with the chain of surveys made for Colonel Miles, and as properly agreed to admit Diehl’s and O’Neal’s, for the reasons given by them.
judgment reversed, and a venire facias de novo awarded.