# THE SUPREME COURT

OF

# *PENNSYLVANIA.*

LANCASTER DISTRICT, MAY, 1832.

3pw299
188 583

ACRE and WEISS *against* GILBERT, LAUBY, and others.

IN ERROR.

Where a deputy Surveyor, upon a precisely descriptive warrant, in 1793, made a survey which did not adjoin on one of the boundaries called for, and run into land that had been previously appropriated, and in 1806 having discovered the mistake, before any other right had commenced, and before he returned his survey, he went on the ground and altered the survey, and marked it on the ground. *Held* that the title by such warrant, and such survey so altered, was good against the title of one who commenced an improvement on the land left out by the first survey, in 1808, although such warrant and survey was not returned until 1810.

Error to the Court of Common Pleas of *Schuylkill* county.

This was an ejectment by the defendants in error, who were plaintiffs below, against the plaintiffs in error, who were defendants below, for fifty three acres of land, in which the plaintiffs obtained a verdict and judgment.

The plaintiff's title to the land was founded on an improvement, commenced in 1808, without office right or survey.

The defendants gave the following evidence of their title:

A warrant to Jacob Buchman for one hundred acres of land, adjoining lands of *Michael Ohl, John Sigfrid* and *James'* land near *Lizard* creek, *Penn* township, *Northampton* county, dated the third of September, seventeen hundred and ninety three, and a survey thereon, including the land in dispute; and bounded by

(Acre & Weis *v.* Gilbert Lauby & others.)

land of *Jacob Sigfrid, Paul Frantz,* land late of *Abel James* and land of *John Hantworks* and *Michael Ohl,*—by *George Palmer,* D. S. made on the seventeenth of October, eighteen hundred and six, and returned on the fifth of July, eighteen hundred and ten. On the twenty second of February, eighteen hundred and fourteen, a patent issued to *Jacob Weiss,* the defendant, for the land in dispute.

It was admitted that in seventeen hundred and ninety three, a certain *Jacob Bachman,* surveyed under *George Palmer;* that he made a survey of the warrant to *Jacob Buchman,* leaving out a part of the vacant land described in said warrant, varying the description, and running into old surveys, as represented in *Palmer's* draft—which survey so erroneously made, *Palmer* refused to return, and rectified the mistake as per his deposition.

Letter and deposition of *George Palmer,* given in evidence.

*Andreas', Penn township,* the 8th. October, 1806.

SIR—I have at length come up, in order to finish the business of *Holshue, Fuhr, Rex & Co.* at which time you ought to be with me, respecting the survey *Jacob Bachman* once made for you, as that survey run into *John Hantwork's,* and I am afraid *Hantwork's* included the valuable part of the land. If you think it worth your attention further, please to let *Jacob* come over and I will endeavor to finish the whole.          I am, with esteem, Yours
                                        GEO. PALMER.

*Jacob Weiss, Esq.*

*Northampton County,* ss.

Before me *Conrad Reyer,* one of the Justices of the Peace, in and for said county, personally appeared *George Palmer,* Esq. late deputy Surveyor of said county and being duly affirmed according to law, did depose and say:— That *Jacob Bachman,* whom the said deponent had some times employed as his Deputy, having made a survey for *Jacob Weiss,* on a warrant granted to *Jacob Buchman,* dated the third day of December, 1793, in *Penn* township, late *Northampton* county, (now *West Penn, Schuylkill* county) and that he the said deponent having examined the draft of said survey, he found that it interfered with an older claim and survey made for *John Hantwork,* and therefore refused to return it—that in October, eighteen hundred and six, the said deponent went personally to the ground claimed by said warrant, and executed the same as conformable thereto as could be done, and afterwards made a return thereof to Surveyor General's office for eighty five acres, there not being sufficient vacant land to make up the complement the said warrant

(Acre & Weis *v.* Lauby.)

called for. That at that time the deponent only opened the line along *Hantwork's* claim, and finding the other lines had been run and distinctly marked for the adjoining surveys, he did not deem it necessary to open them anew—a practice which he had been accustomed to, and which had always been allowed and accepted by the Surveyor General. And the said deponent doth further depose and say, that at the time of his making said survey there was no improvement whatever made on the land included in his return of survey, by any person or persons whatsoever; and also that *Jacob Weiss,* Jr. at his the said deponent's request, was present and assisted him in making the said and other surveys in that neighborhood.

The following draft exhibits the surveys made and referred to with the adjoining boundaries. Those in Italics being surveyed for *Jacob Buchman.*

(Acre & Weis *v.* Gilbert, Lauby & others.)

· The defendants required the court to charge upon the following points:

1. That it is competent for a Surveyor to extend the lines of a survey at any time before it has been returned—provided it does no injury to third persons.

*Answer.*—This is true as a general rule.

2. That the lines of the survey in question having been extended by Mr. Palmer, the deputy surveyor, by going on the ground and marking one of the extending lines, and finding the other lines distinctly marked for the adjoining surveys, before the date of the plaintiff's improvement—was sufficient to entitle the warrantee to the land; that survey having been returned in less than four years after it was made.

*Answer.*—The extension of the lines of the survey in question, by Mr. *Palmer* the deputy surveyor, by going on the ground and marking one of the lines and finding the other lines distinctly marked for the adjoining surveys, before the date of plaintiff's improvement, would have been sufficient to entitle defendant to the land, had he procured the surveys as extended, to have been returned before plaintiffs commenced their improvement.

3. That if the warrant under which the defendant claims, is accurately descriptive of the land for which it calls, and the deputy surveyor, through ignorance or mistake made a survey excluding a part of the land, described in said warrant and not conformably thereto, it was competent for the deputy before the return of survey to correct the mistake, and if in October eighteen hundred and six, before the commencement of plaintiff's improvement, the said deputy did go upon the ground and opened and marked a line, correcting the survey, conformably to the description in said warrant. The title to the land excluded, vested in the defendant at that time. The return of that survey having been in reasonable time.

*Answer.*—This proposition is true, as applicable to cases where the rights of third parties do not intervene. In this case the defendant *Weiss,* has failed to procure his survey, to be returned until eighteen hundred and ten—plaintiff's improvement commenced in eighteen hundred and eight. *Weiss* had his survey made in seventeen hundred and ninety three, excluding the land in controversy. He suffered it to remain so until eighteen hundred and six, when he had his survey altered, so as to include the land in controversy—it was then competent for him to have that alteration made; but he should have returned his survey or should have procured it, to be returned. Whether the survey was not returned through neglect of *Weiss,* or the deputy surveyor, is immaterial in this case. *Gilbert* might purchase the land in question, at any time previous to return of survey, unless he

(Acre & Weis *v.* Gilbert Lauby, & others.)

had actual notice of the alteration in *Weiss'* survey, by which the land in question was included in the survey.  This case cannot be distinguished from the case of *Diggs,* v. *Downing,* 4. *Serg. & Rawle,* 348.  The principles recognized in that case are applicable to this case.  And plaintiff having commenced his improvement before defendant's survey was returned, and without any notice of the alteration of defendant's survey, as made in eighteen hundred and six, has obtained a preference to the land in question.  Your verdict should be for plaintiffs, there being no disputed facts.

It has been objected that the plaintiffs could not recover without a survey.  The land in question, only fifty three acres, is completely surrounded by the lines of adjoining surveys, made by proper authority and well marked.  That is sufficient to designate the plaintiffs' claim and they may in this case recover without survey.

Defendant's counsel excepted to the charge of the court.

### These Errors were assigned.

1. The court erred in their answer to the 1st, 2nd and 3d points propounded to the court.
2. The court erred in charging the jury that the plaintiffs could recover without a survey or office right, to designate the extent of their claim.

*Bannon* for the plaintiff in error.  The question of abandonment was not made below, nor does it occur here.  If it had been raised, the defendant would have given evidence to prove that it was the default of Palmer that the return was not sooner made.  The naked question presented is whether a corrected survey, where a survey had been before made on the same warrant, and found to be incorrect, and not returned, is good against a right which intervenes between the time of making the corrected survey, and the return?

Had this been a shifted warrant, the title would not have attached until the return of survey, but the warrant was precisely descriptive, and when the surveyor discovered the mistake, he had a right to go upon the ground, and make a new survey, correcting the mistake.  And this would be good if no right had been acquired before such corrected survey was made.  The case of *Diggs* v. *Downing,* 4 *Serg. & Rawle,* 348, sustains this principle.  In that case the surveyor corrected his survey by protraction on paper, in our case, he went on the ground and there made the correction.— This constitutes the distinction between that case and this.  He referred to *Vickroy Skelley,* v. 14 *Serg. & Rawle* 372 2 *Smith* 256, 7. *Lowman* v. *Thomas* 4 *Binn* 51, 58.

Here the warrant is precisely descriptive, and the land office furnished notice that this land was appropriated, and by calling at the office of the deputy surveyor it might have been ascertained by the plaintiff before he made his improvement, that the land was included in the corrected survey.

The office of the deputy surveyor is a public office, and he is allowed a fee for a search; and he contended, that the transactions evidenced by that office should affect parties with notice. *Stockman* v. *Blair,* 5· *Bin* 211 *Moore* v. *Shaver.* 6 *Serg & Rawle* 130.

*Loeser* for the defendant in error.

A warrantee has the privilege of having his warrant surveyed on any vacant ground in the commonwealth. The deputy surveyor in the execution of the warrant is the mere agent of the warrantee, and it is therefore fair to say that the first survey was made in the presence and by the direction of *Weiss,* the warrantee. This, he alleged was consistent with the fact. By the survey then made on the ground, the warrant was satisfied. And although an alteration in the survey before the return might be made, yet the survey making the alteration could give no title until it was returned, and accepted by the commonwealth. If he could alter it once, he might again and again, and if this conferred title before the return, the warrantee might keep a large scope of country open, and subject to his caprice; which could not be endured.

By the survey on the ground, the warrantee gives notice to the world of his appropriation of the land surveyed, and any survey making an alteration of the first must create a new contract with the commonwealth, which can only take effect at the return of such altered survey. Here gross laches had occurred for thirteen years elapsed from the first survey until the return, in which time the plaintiff's title commenced.

The opinion of the court was delivered by

Houston, J. The plaintiff claimed by an improvement, commenced in eighteen hundred and eight. They had neither office title, nor survey—how they got out of possession did not appear in this court.

The defendants shewed a warrant of the office of the 3d September, seventeen hundred and ninety three, to *Jacob Buchman,* for one hundred acres of land, adjoining lands of *Michael Ohl, J. Sigfried,* and *James'* land, near *Lizard* creek, in *Northampton* county, (at that time the land in question was in *Northampton* county.) It was admitted that in seventeen hundred and ninety-three, a certain *Jacob Bachman,* acted as an assistant of *G. Palmer,* deputy surveyor of that county, that he executed the above warrant, adjoining *Sigfried*—Touching *Ohl's* at one corner, and not coming near *James'* land, in short that he left out the land in

question, which is bounded by *Ohl's* and *James's* land, and he run into two old surveys, at the one end. This survey was not returned, it could not be returned by the deputy surveyor, if he regarded his duty.

In the beginning of October, eighteen hundred and six, *G. Palmer,* wrote to *Jacob Weiss,* informing him that he had come to that neighborhood to complete some business; that his survey as made by *Bachman,* interfered with an old survey, and requesting him if he thought the matter worth attending to, to send his son, that he, *Palmer,* might complete the business. On the 17th of October *Palmer* made a survey, taking in the land in question which was expressly called for by the warrant, and leaving out the land included in prior surveys. This survey was returned the the fifth July eighteen hundred and ten, and on twenty second February, eighteen hundred and four, a patent issued to *Jacob Weiss.*

*George Palmer's* deposition had been taken, and was read in the cause, he stated that he had refused to return the first survey made by *Bachman,* because he had discovered that it interfered with older titles; that in October, eighteen hundred and six, deponent went personally to the ground and executed the warrant as comformably to its call as could be done and afterwards returned it for eighty five acres, there not being land enough to make up one hundred acres; that at the time he only marked one line adjoining *Hantwork's* claim; that he examined the other lines, and finding them distinctly marked, for the adjoining surveys, he did not remark them, a practice he had been accustomed to, and which had been sanctioned by the Surveyor general; that at that time there was no improvement whatever on the land included in the survey as returned by any person whatever; that young *Weiss* was along when he made the survey. No other testimony was sent here with the record.

The defendants requested the court to charge on the following points:

1. That it is competent to the Surveyor to extend the lines of a survey at any time before it has been returned: provided it does no injury to third persons.

*Answer by the court.*—This is true as a general proposition.

2. That the lines of the survey in question, having been extended by Mr. *Palmer,* the deputy surveyor, by going on the ground, and marking one of the extending lines, and finding the others distinctly marked for the adjoining surveys, before the date of plaintiff's improvement, was sufficient to entitle the warrantee to the land, that survey having been returned in less than four years after it was made.

*Answer.* The extension of the lines of the survey in question, by Mr. *Palmer,* deputy surveyor, going on the ground, and marking one of the lines, and finding the other lines distinctly marked for the adjoining surveys, before the date of the plaintiff's improvement, would have been sufficient to entitle defendant to the land, had he procured the survey as extended, to be returned before plaintiffs commenced their improvement.

.3. That if the warrant under which the defendant claims, is accurately descriptive of the land for which it calls, and the deputy surveyor through ignorance or mistake made a survey, excluding part of the land described in said warrant, and not conformably thereto, it was competent for the deputy surveyor, before the return of survey to correct the mistake: and if in October, eighteen hundred and six, before the commencement of plaintiff's improvement, the said deputy did go on the ground, and opened and marked a line, correcting the survey, conformably to the description in the said warrant, the title to the land included vested in the defendant at that time: the return of that survey having been made in a reasonable time.

*Answer.*—This proposition is true as applicable to cases where the rights of third parties do not intervene. In this case the defendant *Weiss* has failed to procure his survey to be returned until eighteen hundred and ten, the plantiff's improvement commenced in eighteen hundred and eight. *Weiss* had his survey made in seventeen hundred and ninety three, excluding the land in controversy; he suffered it to remain so till eighteen hundred and six, when he had his survey altered so as to include the land in controversy; it was then competent to have the alteration made; but he should have procured his survey to be returned. Whether the survey was not returned through the neglect of *Weiss,* or of the deputy surveyor is immaterial in this case. *Gilbert* might purchase the land in question at any time previous to the return of survey, unless he had actual notice of the alteration of *Weiss'* survey, by which the land in question was included in the survey. This cannot be distinguished from the case of *Diggs* v. *Downing,* 4 *Serg. & Rawle,* 348. The principles recognized in that case are applicable to this: and the plaintiff having commenced his improvement before the defendant's survey was returned, without any notice of the alteration of defendant's survey, as made in eighteen hundred and six, has obtained a preference to the land in question. Your verdict should be for the plaintiffs, there being no disputed facts.

The Judge continued,

It has been objected that the plaintiffs could not recover without a survey. The land in question only fifty two acres, is completely surrounded by the lines of adjoining surveys, made by proper authority and well marked; that is sufficient to designat

(Acre, & Weiss, *v.* Lauby & others.)

the plaintiff's claim, and they may in this case recover without a survey.

In countries where the government has no land to sell, or where there is but one mode of selling, and by that the contract is made and evidenced by a single instrument under the seal of the government, which transfers the soil, designated by boundaries previously established, and evidences the payment of the money, by the purchaser, it is possible to lay down general rules, which will apply to all cases; but where the state sells by warrants on which all the purchase money has been paid, some of which, according to the law under which they issued, vest a title in the holder of them as soon as they are surveyed and returned, and others although paid for, and surveyed and returned, yet vest no title unless the owner within a specified time enters on the land and by himself or a tenant, improves the same by clearing and cultivating a prescribed number of acres, within a prescribed period. Where the same government has at other times disposed of land by location or application, on which no money was paid, except the fees to the officers, and none was to be paid until the land was surveyed and returned; and then to be paid within a year, and where that time of payment has been extended by legislative provision for more than sixty years; where although the regulation directed these locations or applications to be surveyed and returned within six months, not one fourth of them were surveyed or returned within that time, and yet when returned have been accepted every year since, and will and must for many years to come; in cases where there has been a survey accompanied by actual possession, where there is no adverse claim, and in many cases where there is an adverse claim, *Biddle* v. *Dougal* 5 *Binney* 142: where in addition to all this, it has by long usage become the settled law, that if two persons obtain office rights, describing the said land, one of them can survey and return and hold other land, not described, and in some cases, as where after survey and before return he moves on to the land and continues to reside there, thus giving notice of his appropriation of it, can hold it without a return of his survey, when to these is superadded, that at all times a person would acquire a right to vacant, and unsold land, or to land which had been surveyed on location and abandoned, by entering on and occupying it, by making it a place of abode and the means of supporting a family, and might and may yet pay the State for it in the manner prescribed, or which shall be prescribed, add to all these that the owner of an office title, or the actual settler, may after having commenced a title, change his mind, and determine not to take the land, and not to pay the State for it; where I say all these modes of acquiring right to land have existed and the rights, under them conflict, and are disputed in courts, it must be apparent that but few rules can be of general application, that precision of description in location, or warrant diligence in procuring the com-

pletion of the title, accident of mistake or himself or the surveyor or other officer in returning it, notice or want of notice of what has been done, and is intended to be done, brought home to an adverse claimant, in short that a thousand circumstances may vary the jus-tice of the case and the law of the case, for they are generally the same thing.   General rules, may, it is true, be adopted which will suit many of these cases, but many exceptions depending on cir-cumstances, as different as possible, make the exceptions to these rules, that is, make cases which do not come within these rules, very numerous.   Almost every one of our suits as to the title to lands, are cases in which it was contended that the circumstances made it an exception from general rules.

It has too often happened that in reporting those cases, the facts and circumstances of the case are stated in a very defective manner, and sometimes the decision founded on those peculiar facts has been mistaken for, and reported as, a general rule.   This has led, and will lead to confusion and uncertainty.   The present case is sent here with no testimony except *G. Palmer's* deposition.—— It was decided below as an abstract question, depending solely on time, and it was said that whether the delay arose from the fault of the surveyor, or of the owner, was immaterial.   A proposition which is never true except when an office right has been surveyed on land not described in it, and has not been entered on and occu-pied by the owner of the right, or where an addition to a survey has been made on paper, without going to the ground and marking the lines of that addition.

I proceed to notice some of the cases on the subject of altering the lines of surveys.   *Drinker* v. *Holliday;* 2 *Yeates* 87.—— The facts of this case are that *Holliday's* warrant was surveyed and returned before the plaintiff's title commenced.   *Drinker's* was laid so as to adjoin it as then returned.   It was after this discover-ed that *Holliday's* interfered with another title older than itself, and to get clear of this, an order to re-survey it was obtained.—— It was re-surveyed clear of the older title, but so as to include, what before that time had been surveyed and returned for the person un-der whom *Drinker* claimed.   It decided that *Holliday's* having ex-ecuted his survey and designated his boundary, was notice of the extent of his claim, and any person might obtain the land adjoining. That although *Holliday* might resurvey and take in vacant land, he could not take appropriated land; the justice of this decision is very obvious.   *Drinker* had acquired right to the land after *Hol-liday*, by his survey, had given notice that he did not claim it.—— The principle of this case has been adhered to, but an inaccuracy has crept into the report.   It is said after a survey has been com-pleted on the ground, a new survey cannot be made without new directions, because the authority of the deputy surveyor has been determined. In that case *Holliday's* survey had been returned, and

in such case no new survey can be made without an order from the board of property to the Surveyor General. Before the survey is returned, the lines may be extended or the whole situation changed without any new order; so are all the cases. The next case is in *Adams, Lessee,* v. *Goodlander & others* 2 *Yeates,* 313. In this case the plaintiff's survey had been executed so as to exclude the land in question, and afterwards and before the return enlarged so as to include it. One of the defendants claimed under an application laid after the plaintiff's first survey, and others on an improvement after the plaintiff's first survey, and before his second enlarged survey, and the decision was in favor of the defendants. — See also *Evans* v. *Nargang*; 2 *Bin.* 57, and *Biddle* v. *Dougel* Id 37. The same case is again reported, 5 *Bin.* 142, and the same point taken as settled law, the title was then disputed on other grounds.

*Davis* v. *Keefer,* 4 *Bin.* 164 is more like the case before us than any other in our books, and greatly contrary to the decision in this case. The plaintiff in that case claimed under a warrant of seventeen hundred and seventy two, to adjoin *James Clark,* the owner went with the Deputy Surveyor to execute the warrant, but *Clark* claimed by improvement, and at that time had no survey, nor line marked on that side, but he proposed to take a warrant and to procure a survey. *Gants* paid the Deputy Surveyor, and left his warrant to be executed as soon as *Clark's* survey was made. *Clark's* land was surveyed in seventeen hundred and seventy three, and sometime after *Gants's* warrant was surveyed not adjoining *Clark* but leaving forty acres between him and *Clark,* and that was the only good land he could get. In seventeen hundred and eighty six *Gants* wrote to the deputy Surveyor, on the subject, inquiring what had been done. An answer was written which did not appear to have reached him. In seventeen hundred and eighty six, *Clark* took a second warrant for the land between his old tract and *Gants's* as laid, had a survey and return, and in seventeen hundred and eighty nine by two separate deeds to the purchaser, sold both his tracts, with covenant of warranty as to the old tract, but none as to the second. In describing the old tract, it called for *Gants's* as adjoining it on four lines, though if the second survey was good it did not adjoin *Gants's* at all. This gave notice of *Gants's* claim to the purchaser. One of his deeds shewed that *Gants* had some claim to the land conveyed to him by the other. In seventeen hundred and ninety six, *Gants* procured an order of the board of property for a survey of his warrant which was made so as to include the forty acres taken by *Clark's* second warrant. In eighteen hundred *Gants* sold to *Davis* who took a patent and brought this suit. On the first trial there was a verdict for plaintiff which was set aside; a second trial before *Smith,* Justice and again a ver-

(Acrc, & Wise *v.* Lauby & others.)

dict for plaintiff which was confirmed on appeal. I have stated this case minutely, because without such statement it would appear to contradict the prior decisions. It was a precisely descriptive warrant adjoining *Clark* and between him and the *North* mountain. It was a warrant on which all the purchase money had been paid, and not a location on which nothing but office fees had been paid. — The Deputy Surveyor could not mistake where it was to be laid. *Clark* knew of its existence, and where to be laid for *Gants* and the Deputy Surveyor had called on him when they went first to execute it, and he had promised to take a warrant and procure a survey that it might be laid adjoining to it. The Deputy Surveyor although in a certain sense entrusted to lay it, yet had no authority and no right to remove it so as to leave out the best land. *Clark* knew it was unfairly laid and attempted to take advantage of this, and his deed gave notice to *Keefer*, who purchased from *Clark*, of *Gants'* claim to the land adjoining the old survey. It has been said there is no difference in the law whether a title commences by warrant on which all the purchase money has been paid, or a location on which none has been paid, and to a certain extent and under certain circumstances, as where each has been duly pursued, this is true. The earliest in date takes the land, but when the question turns on abandonment, there is a wide difference, a man will not readily abandon what he has paid for, though he may determine not to complete a right on which he has paid nothing. *Cox* v. *Cromwell*, 3 *Bin* 116. Many cases say a right on location is easily abandoned.

*Davis* v. *Keefer* is a strong case, to show that a warrant on which purchase money has been paid, is not easily lost by neglect. It is also a strong case to shew that it is material in case of a warrant and payment of money, whether the delay was occasioned by the fault of surveyor or owner, it appeared *Gant* had paid money to the Surveyor when first on the ground in seventeen hundred and seventy two. Still however I do not think the decision would have been as it is, were it not for the notice to *Clark*, and through the deed, to *Keefer*, of the right of *Gants*. In short it decides that where a man has put into the hands of the deputy surveyor, a precisely descriptive warrant, and paid him for surveying and returning the right of the owner of the warrant as against those who have notice of the facts will not be lost, by a delay of deputy surveyor from seventeen hundred and seventy two till seventeen hundred and ninety six. The notice in this case too, was actual notice to *Clark*, of the existence of *Gant's* warrant, and that it was to adjoin his survey on his improvement when surveyed. In addition I have no doubt the jury considered that from the whole of the proceedings there was something worse than mere negligence; some combination between *Clark* and the Deputy Surveyor, and where a Jury find

fraud or find a verdict which is only right if they believe there was fraud.   Where two Juries find in the same way, Courts will take it there was fraud, and that makes such a case an exception to rules established for fair cases. I have dwelt on this case to show how important it is in the trial of causes to attend to facts and how unsafe for a Judge to disregard the facts and decide on what are called general rules.   *Graham* v. *Moore*, 4 *Serg. & Rawle* 462.

The survey of the defendants was at first laid on ground different from that called for, it was worse, than that it was laid on ground before appropriated. To have returned it as first laid, would have been a violation of duty in the Deputy Surveyor.   That it was so laid, seems to have been the fault of his assistant.   Whether that assistant had been paid for making and returning the survey does not appear.   The matter rested from seventeen hundred and ninety three till eighteen hundred and six, and if in the mean time an innocent person had taken a warrant for, or improved on, the land in question, such person might have held it.   Nothing of the kind was done, and in eighteen hundred and six the land called by that warrant was as much unclaimed by any other person as it had been in seventeen hundred and ninety three.   In eighteen hundred and six it was duly surveyed adjoining *James's* land on one side, *Ohl's* on another side, *Sigfried's* on a third, and a line run and marked on the fourth side.   The lines of the old adjoining surveys were examined, and being found on the ground were not remarked —— This was right 3 *Serg. & Rawle*, 283 *Covert & Irwin*, 13 *Serg. & Rawle* 122 *Lamburne* v. *Hartswick*.

The case of *Star* v. *Bradford*, 2 *Penn. Rep.* 384, has been cited to support the decision in this case.   I agreed to the decision of this court in that case, but I would have taken into view not barely the lapse of time from seventeen hundred and sixty nine, the date of plaintiff's application, till seventeen hundred and eighty four the date of the warrant of defendant in error, but also that there was no return of that survey until after seventeen hundred and eighty eight, before which time the adverse warrant was surveyed, returned, patented and sold to an innocent purchaser.   The act ninth April, seventeen hundred and eighty one, had directed that all surveys not before returned, should be returned within nine months, and the act of fifth April, seventeen hundred and eighty two, had made it lawful for the Surveyor General to receive returns of surveys fairly made for such further period as to him should appear just and reasonable. The owner of *E. Henning's* warrant had neglected the first, and the last act until another had completed a legal title and sold it, and the length of time and the sale made it unjust and unreasonable to confirm his title.   That case however takes the distinction between the case where the delay is owing to the fault of the surveyor, and to the fault of the party.   See page 396, and

between abandonment of a warrant on which the money has been paid, and an application on which none has been paid, page 395.

It remains to notice the case of *Diggs,* v. *Downing,* 4 *Serg. & Rawle,* 348, on which the judge in the court below founded his opinion, and certainly in the hurry of a trial that case was not understood—such is the opinion of this court, including the Chief Justice, who delivered that opinion. It was a practice sanctioned by many decisions, that when a survey was completed, as far as running and marking the lines, and making the calculations, and it was then discovered that land enough had not been included, the deputy surveyor included more land by protraction on paper, so as to fill the warrant, and returned the draft as protracted to the surveyor general's office, and if the land taken in by protraction was unappropriated before, the party had title according to the draft returned. But it is the return, which in such case gives title. Sometimes the surveyor went to the ground and marked the lines of the part added, and this was the better course and in such case, the title was good, unless lost by some subsequent misconduct of the owners, from time of survey, where the warant described the land, *Diggs* v. *Downing,* settled that when a survey was made on the ground, and being found too small, an addition was plotted to it, but never marked on the ground and not returned to the office of the surveyor general, such additional plotted part was not to be held against an intervening warrant survey, and return patent and sale. It is apparent from the whole opinion, that if the deputy surveyor had gone and marked the lines including the addition, before any adverse right commenced, no negligence of the deputy surveyor would after that, unless very gross indeed, have destroyed the title of the owner of the first and descriptive warrant. Four years lying by, would not of itself have done it, nor a much longer time; according to *Davis* and *Keeffer,* if the adverse claimant had notice.

Judgment reversed and a *venire de novo* awarded.