WERDMAN *against* FELMLY and others.

IN ERROR.

1813.

Sunbury,
Monday,
June 7.

**E**RROR to *Centre* County. It was an ejectment by *Werdman*, to recover a tract of land which he claimed under the following title. On the 29th of *June* 1772, a warrant issued in the name of *Robert Mackey* for 50 acres of land adjoining the proprietaries' survey, *Reuben Haines* and the *Nittany* mountain, in *Penn's* creek valley. A survey was made on this warrant 15th *June* 1774, of $77\frac{4}{10}$ acres, by *William Maclay*, deputy surveyor, which by the return of survey, adjoined the proprietaries' survey on the south, *John Cummins* on the west, and *Janet Sharon* on the east. .The distance between the surveys of *Cummins* and *Sharon*, was 98 perches by the survey, whereas in point of fact it was 190 perches; so that if *Mackey's* land was bounded by both *Cummins* and *Sharon*, it would contain 150 acres instead of $77\frac{4}{10}$ acres: and if it comprehended the amount mentioned in the survey, there was a large surplus. *Janet Sharon's* survey contained $311\frac{5}{8}$ acres, surveyed under an order for 300 acres; and it appeared by the field notes of *Maclay*, that the tracts of *Mackey* and *Sharon* were surveyed by him on the same day, that each called for the other, and that the lines which were actually run for *Janet Sharon* would contain about 100 acres more than the $311\frac{5}{8}$ returned. The land in dispute was that which the lines of *Janet Sharon*, as run by the deputy surveyor, would include beyond the $311\frac{5}{8}$ acres in the survey: or in other words, it was that which lay between the 311 acre survey of *Sharon*, and the 77 acre survey of *Mackey*, allowing it to run the 98 perches from the survey of *Cummins*; the plaintiff claiming under *Mackey's* warrant and survey the whole land between *Cummins* and *Sharon*. On the 9th of *April* 1774, which was before the survey, *Robert Mackey* conveyed to *James Potter*. On the 19th of *April* 1793, *Mackey's* and *Sharon's* surveys were returned into office, without any correction as to boundaries. On the 1st of *June* 1794, *Potter's* son conveyed to *Thomas Gordon*, without mentioning any quantity; but there was evidence of his father's having sold it as for 80

*If a deputy surveyor by mistake returns two surveys as adjoining, when in truth there are a hundred acres between them, this does not preclude him from taking out in his own name a warrant for the intermediate land, after the mistake is discovered. Otherwise, if he fraudulently makes the return, with a view to secure the land for himself: though even in the case of fraud, the land will be open to other persons.*

acres. On the 22d of *November* 1796, *Gordon* conveyed to *Spencer*, as containing, with an improvement, 170 acres more or less: and *Spencer* on the 20th of *June* 1798 obtained a patent, having previously executed articles of agreement for a conveyance to *Werdman* the plaintiff.

The defendants claimed under a warrant to *William Maclay*, dated the 1st of *July* 1784, for the vacant land between *Mackey* and *Sharon*. On this warrant a survey was made on the 15th *October* 1784, and a patent issued to *Maclay* the 2d of *September* 1790.

The defendants also gave in evidence that *Werdman* had obtained a warrant for the vacancy on the 20th of *November* 1784, and had a survey returned on the 21st of *September* 1795. *Werdman* did not claim under this warrant and survey, but under *Mackey's*: and the object of the evidence was to shew that he had not considered *Mackey's* survey as comprehending the whole land between *Cummins* and *Sharon*.

The defendants' counsel contended, that *Maclay*, who made both *Mackey's* and *Sharon's* surveys, perceiving that he could not agreeably to his instructions return the whole quantity intended for *Janet Sharon*, cut off 100 acres on the west end of that survey; that of course there was a vacancy at that end of 100 acres between *Sharon* and *Mackey;* and as the surveys were not returned into office until 19th *May* 1783, through forgetfulness and mistake they were represented on the drafts as adjoining each other: and that *Maclay* had the same right as any one else, to appropriate the vacancy to himself upon the discovery of the mistake. The plaintiff's counsel on the contrary insisted that *Maclay* had fraudulently contrived the returns to secure the vacancy for himself; and that at all events, having returned the two surveys as adjoining, he was estopped from denying it.

The President of the District, on this part of the case charged the jury, that if the survey made for *Mackey* really included the land in dispute, and was so returned, their verdict should be for the plaintiff; and that it should likewise be for the plaintiff if *W. Maclay* fraudulently made the contrivance to secure it for himself. But if they were of opinion that it was not intended to include this land in *Mackey's* survey, and that it was represented in the return

adjoining *Janet Sharon* by mistake, the verdict should be for the defendant.

The plaintiff tendered a bill of exceptions.

The cause was argued last *June* Term by *Huston* and *Duncan* for the plaintiff in error, and by *Burnside* and *Hale* contra.

*Cur. Adv. vult.*

TILGHMAN C. J. having stated the title, the arguments of the counsel, and the Court's charge, delivered his opinion as follows:

It appears very clearly to me, that the charge delivered to the jury was right, and that the principle contended for by the plaintiff cannot be supported. The instructions from the proprietaries to the deputy surveyor, were that not more than ten per cent. surplus (exclusive of six per cent. for roads, &c.) should be returned on any warrant. *Maclay* therefore would have broken his instructions, if he had returned 150 acres on *Mackey's* warrant for 50 acres, or 400 acres on *Janet Sharon's* warrant for 300 acres. But if such return had been made, and the error discovered by the surveyor general, it might have been sent back with orders to correct it. Or if the proprietaries' officers had thought proper, they might have accepted the survey, and charged the warrantee with the price of the surplus. How then can it be said that *Maclay* is *estopped* from shewing the mistake? If the land had belonged to *him*, there might be some colour for the argument; but as it was the property first of the late proprietaries and then of the Commonwealth, an estoppel of the kind set up would be depriving one man of his property for the negligence of another. If indeed, *Maclay* had been guilty of a fraud, with a view of securing this land for himself, there might be good reason why he should not have it, although it would be open to other persons. This the judge told the jury, and in saying so he went far enough. For if *Maclay* meant to do justice both to the proprietaries and *Mackey*, and really made a mistake in his return, there would be no reason why upon the mistake being corrected, he might not take up the land as well as another. There was a good deal more evidence,

which I have not mentioned, because although it might have had weight with the jury, it need not be taken into consideration by this Court, before whom the only question is, whether the cause was properly submitted to the jury. In a case of this kind, where the plaintiff insists on abiding by the return of survey without enquiring into errors, it is worthy of consideration, that before there was a confirmation of this survey by patent, the land in dispute had been granted to *Maclay*. Now it is certain, that before a patent had been granted to either one or the other, the board of property might have enquired into the whole matter, corrected errors, and done justice to all parties. The charge of the Court placed the cause before the jury, just as if it had been before the board of property, and I do not see what more the plaintiff ought to have desired. I am therefore of opinion that the judgment should be affirmed.

YEATES J. The plaintiff claimed under a warrant issued to *Robert Mackey* for 50 acres of land, dated 29th *June* 1772, and a survey made thereon 15th *June* 1774, said to contain 77 $\frac{4}{10}$ acres and to adjoin the proprietary manor, *Janet Sharon* and *John Cummings*. *James Potter*, Esq. made use of *Mackey's* name in taking out the warrant. Previous to the survey, *Mackey* on the 9th *April* 1774, executed to *Potter* a deed poll for a nominal consideration without specifying any quantity of land; and in like manner on the 1st of *June* 1794, *Potter* conveyed to *Thomas Gordon*, in consideration of 80*l*. On the 22d of *November* 1796, *Gordon* conveyed to *Thomas Spencer*, the survey made in the name of *Mackey*, and some adjoining lands claimed by improvement, supposed to contain 170 acres more or less, and *Spencer*, on 23d *November* 1798, entered into articles of agreement with *John Werdman* the plaintiff, describing *Mackey's* survey particularly. The sole question was, whether this survey included the lands in controversy? If it so included them, it was admitted upon the trial that the verdict ought to have been rendered for the plaintiff in error.

The plaintiffs' great reliance rested on the grounds that this survey, as returned by *William Maclay*, and also his field notes thereof, called for a beginning post, a corner of *Janet Sharon* and the proprietary tract, and that the survey on *Sharon's* warrant, which was the property of *Ma-*

*clay*, also called for *Mackey* as the adjoining tract. It is insisted that it was not competent to *Maclay*, or any persons claiming under him, to allege and contest that the two surveys did not adjoin each other.

It was in my idea properly submitted to the jury, by the president of the Court, as a fact for their decision, whether these returns were occasioned by mistake and over-sight, whether the acts of the deputy surveyor were tainted by design and fraud, or whether the actual survey made on the ground for *Mackey*, really comprehended the tract in dispute.

It has often been determined by the judges of this Court, that the appropriation of vacant lands by survey to individual use, is founded upon what in truth has been really transacted on the spot by the surveyors. A return of survey may be erroneous, either in the courses or distances, or the adjoining land which it represents. It may be corrected by natural or artificial boundaries, or other plain circumstances, clearly shewing that the survey as returned ought not implicitly to govern. It would be going a most unwarrantable length, to assert that the inaccuracies or mistakes of deputy surveyors as to the position of lands, supposed to adjoin other surveyed tracts, should operate conclusively, either on the late proprietaries or the Commonwealth. The most that can be said of a return of survey, is, that it shall be presumed to be correct throughout, until the contrary be clearly shewn; and I will readily admit, that this principle should most strongly hold, in cases where the surveyor himself would avail himself of a supposed mistake, for his own advantage. We are taught by experience, that the prejudices of jurors, in such instances, run strongly against the artists.

From the detail of the evidence which accompanied the charge, it appears that strong circumstances existed in this case, from whence it might fairly be inferred that an unintentional mistake, free from all fraud, might be ascribed to the deputy.

The real distance between *Cumming's* and *Sharon's* lines is found to be nearly 190 perches, instead of 90 perches, marked in the draft; and if *Mackey's* survey is to adjoin *Sharon's*, the area of the former instead of being $77\frac{4}{10}$ acres, would exceed 150 acres. Besides, Mr. *Potter*, who

took out the warrant, and held the land above twenty years, never set up a pretence to this large overplus. When he was about selling, he claimed about 80 acres under his survey. And the plaintiff himself, who executed his own warrant of 20th *November* 1784, lays down the survey made thereon, as occupying the intermediate space between *Mackey* and *Sharon*. His claim under this title he now prudently abandons. Moreover it appeared unquestionably, from the field notes of *Maclay*, that the lands originally surveyed under the warrant of *Sharon*, (the lines thereof corresponding with the draft returned in every particular,) comprehended the lands for which the ejectment was brought, and actually included 100 acres more than were afterwards returned on it. There was a strong probability therefore, that *Maclay* threw off that surplus quantity, under an apprehension that the return of the whole would not be accepted in the office of the surveyor general. If he had adhered to this large survey, there could have been no pretence of claim under *Mackey* to the lands in question; and by taking out a new warrant in his own name on the 1st *July* 1784, for the lands thus thrown out, procuring a survey to be made in *October* following, and patenting the lands on the 2d *September* 1790, he conferred no additional efficacy on the survey theretofore made under the right of *Mackey*. Mr. *Potter* did not feel himself aggrieved thereby, but he and the different proprietors of *Mackey's* warrants, by their several transfers recognized the survey made for *Maclay* under the warrant in his own name, and made no pretensions to the lands in controversy.

It forms however no part of our duty to determine, whether under this combination of circumstances, the jury were justified in finding that the survey of *Mackey* excluded the lands in dispute. If they returned a verdict against the weight of evidence, the legal appropriate remedy of the plaintiff was an application to the Court of Common Pleas on a motion for a new trial, when the just discretion of the Court would be exercised. We are called upon to pronounce whether that Court erred in submitting the extent of *Mackey's* survey to the jury, as a question of fact to be decided by them, or whether the same was exclusively the province of the Court as a matter of law. For the reasons

I have given I am clearly of opinion, that the Court have decided correctly on the occasion, and that the judgment of the Court of Common Pleas be affirmed.

1813.

WERDMAN
v.
FELMLY
et al.

BRACKENRIDGE J. was prevented by sickness from hearing the argument.

Judgment affirmed.