*461 The opinion of the Court was delivered by
Duncan J.
The President of the Court of Common Pleas, having filed of record the charge of the Court, under the act of assembly, it is brought up for revision by this Court, and the errors in law now assigned, are, 1st. That the Court erred in stating it to be a matter of law, “ that if a surveyor marks corners and lines on the ground, and makes a return, calling for some of them, it is to be presumed, that he returns by the marked lines and corners; for otherwise he would deceive his employers. If the surveyor intended to cut off land, why not call for posts ? if he had, there would have been no difficulty; but his leaving out land, and yet calling for the marked corners, is a gross fraud, if he left out any land included in such lines.” In this State, the natural and artificial boundaries, the monuments described as the boundaries and limits of a survey, in general form the only evidence of a survey. To these limits, thus ¡returned, the survey extends, whatever may be the courses and distances expressed in such return; and this is the common law of the land. If unbroken usage, and a uniform course of judicial decisions can make the law, then this was properly decided by the Court, to be a general rule of property. On this head, I shall content myself with referring only to one decision of the Court. Mageehan v. Lessee of Adams, 2 Binn. 109. A survey and patent of one Conrad, which were given in evidence, called for, as the place of beginning, a black oak on the State line, thence by the same 130 perches, to a post. The plaintiff below, offered to prove that the black oak, and the marked line run from the black oak, were not on the State line, but about 30 perches east of it, and the evidence was admitted,and the plaintiff recovered according to the marked line. The judgment was affirmed by the unanimous opinion of the Court, who stated that this had been so settled many times. This is not peculiar to Pennsylvania. In Massachusetts, the same rule prevails. Howe et al. v. Bass. 2 Mass. Rep. 380. The Court there consider it as an established rule of construction, that where a deed describes lands by its ad-measurement, and at the same time by known and visible monuments, the latter shall prevail; and declare that it had been long and invariably held, that in case of a variance in the description of land, between the monuments and the length of lines, the former are to govern, and that, without any re* *462 lation to the quantity. The corner trees here are the visible hounding trees, and allowed land marks, which, by our laws, to remove, is made an indictable offence.
Second error assigned. The Court state the law to be, “that where lines and corners are to be found on the ground, they cannot be departed from, though there may be some variance in the courses, and if the waters are found to agree with the lines and corners returned, this is strong evidence of a survey actually made.” So has the law ever been held. The question has been frequently agitated, and is now put at rest. The field notes, the original plots made by the surveyor, the survey returned, and the patent, are only evidence of the survey. The real survey, the primary evidence, is, the marks on the ground. In Yoder v. Fleming, before Shippen and Yeates, Justices, at Nisi Prius, at Lewistown, 1798, 2 Sm. L. 256, the question occurred, whether the pretensions of a party should be determined by the courses and distances expressed in the return of survey, or by the marked trees, and lines actually run; and thus was the law laid down by these Judges, whose experience in questions of this nature, was greater than that of any men now living.. “ The natural or artificial boundaries of a survey, have uniformly prevailed, and there is absolute certainty, when a right line is followed from one corner to another; but the best instruments will vary in some small degree. For the sake of public convenience, and individual safety, all the lands comprised within certain marked lines, or proceeding from marked and known corners, will pass in a deed. Any surplus measure, or variation in the courses and distances, will not vitiate the instrument. The lines actually run on the ground, are the true survey and appropriation of the land contracted for; but the return of survey is only evidence thereof, and shall be controlled by the actual survey. This point had been frequently determined, and particularly in Walker v. Furry & Krehl, before Ch. J. M‘Kean, in 1790.
The third error assigned, is, in the Court stating to the jury as an invariable rule, that where two corners are established, the course is to be disregarded. As a general rule, this is admitted by the counsel of the plaintiffs in error. It is contended, that it is stated in too broad terms, and is not without exception. Rut the Court have qualified the general expression of the invariable nature of the rule; for they *463 proceed to state, “ especially in a closing line(and applying the rule to the closing line here,) “ by taking this course, and running from the post to the white oak, the course is varied, and the distance; but all the lines and corners except one, are preservedand this was precisely decided, in Yoder v. Fleming,
The counsel for the defendants below, on the trial contended, that the surveyor, after he had calculated the whole contents, found he could not return the whole, as the surplus would exceed ten per cent, and therefore he threw out a part, fairly and intentionally. The fact of throwing out a part, was left to the jury; “ you will decide, whether the surveyor did not return the survey on the exterior linesand towards the close of the charge, on a suggestion from the counsel of the plaintiffs in error, it is repeated, that this fact is submitted to the jury.
How it arose, that the plot of the deputy who made the survey returned to his principal, varies in one course SSdegrees east, from the marks on the ground, it is difficult to account for. It could not be, that he intended to return the whole block of surveys by an open line, for he has returned them by the marked line and marked boundaries. It could not be that he intended to disregard the whole of the marked exterior line, because the corners of that exterior line are made the boundaries of the survey returned; because they are made by him to represent the exterior line of the survey. It could not be, that he intended to throw off the triangular piece of about 11 acres, in obedience to his instructions not to return more than ten per cent surplus, for he would still leave a surplus, if that was his guide, which he could not return on the other six warrants. It could not be thought he intended to change the whole surveys, because he refers to the marked boundary; because the waters are laid down as they actually run, on the surveys marked on the ground; and because it would include part of the land he secured for himself on that same day, and which he returned. But however this was, all this was left to the jury, who have found the fact, that the surveys of defendant in error, did include the lands in dispute, and that the surveyor did restrain them to the exterior line, and that no part of the original survey was thrown out. The extent of the survey was a fact, and as such was left to, and has been found by the jury. If *464 the jury erred, this Court cannot rectify the error, Werdman v. Felmly, 6 Binn. 39.
It is again alleged as error, that the Court laid down the law, “ that if alease is given for a tract, more or less, and there is at the timé more than the quantity, and the party occupies lands on both sides of the disputed line, under the lease, unless the lease specifies, or unless it is proved that a part was excepted, it must be considered as a lease of the whole.” This will be considered with respect to Hall’s lease, and then to Brown’s. Elizabeth Powel, under whom J. H. Powel, the plaintiff in error, claims, the then proprietor, to April Term, 1800, brought an ejectment against the Halls. This was four years before the survey made under the direction of John Canon, and certainly for alí the lands within the survey. May 28th, 1800, judgment;—Thomas Hall having taken a lease for himself and brothers. The lease is, “ of that certain plantation situated on the waters of Big Trough Creek, in Union township, containing about 230 acres, be the same more or less, now in possession of Thomas Hall.” This is not a lease of any particular number of acres, by the acre, but of the tract in solido, in his possession; a lease in bulk; the tract of land in his possession, whatever it may contain. To the same term an ejectment is brought against James Brown, by Elizabeth Powel, and on 2d June, 1800, judgment against defendants for costs; defendants having taken a lease. The lease is dated 2d June, 1800, and is “ for all that certain plantation, or part of a tract of land, situated on Big Trough Creek waters, supposed to contain about 20 acres, more or less, now in the occupancy of the said James Brown.” What is the extent of this demise ? All that Brown was in the occupancy of; all that certain plantation, or part of a tract, or whatever the quantity might be ; they knew not how much of the plantation he was in possession of; they supposed it about 20 acres, but whether it was more or less, whatever was in his possession, he leased.
The description in the lease is not of quantity, but of occupancy. The plantation, the part of the tract in his occupancy, is the description; the quantity is not ascertained, nor intended to be ascertained by the number of acres; its boundaries and limits, are Brown’s occupancy, supposed to contain about 20 acres more or less. It is any thing else than a lease of a certain number of acres; it is uncertain of itself *465 supposed, about, more or less, and must be rendered certain by some other matter referred to in the lease ; that matter is the occupancy, which is the only limit and bound of the lease; it is thus rendered certain. In investigating the judicial construction of any written instrument, reference must be had to the subject matter; the subject matter of the lease is, that certain plantation, or part of a tract of land, then in the occupancy of James Brown; all the lands in that tract of land, in the occupancy of Brown, whatever might be the quantity. If the jury found this land to be in the survey, plantation, or tract of land of Mrs. Towel, and Brown to be in possession in 1800, Cas is here contended by the plaintiffs in error,) then it was leased, and Brown became the tenant of Mrs. Powel. The qualification of the legal import of the words used in the lease, would be, if at the time of the execution of the lease, a part was excepted, and then it would be otherwise ; then the terms would be explained and restricted, and thus it is qualified in the opinion delivered, If this be so, then no question of limits could arise, because there was no adverse possession.
But further error is alleged. As it respects the operation of the act of limitations, every decision, every construction on the law, is most important, for it extends to every part of the State, and embraces the rights and possession of every man. John H. Powel, or those under whom he claims, was in possession of a part. This is admitted by the plaintiffs in in error, for Brown and Hall were his tenants, of whatever they leased, be it more or less, during the time in which the limitation would run. As they entered originally, without colour of title, on the deeded lands of the defendant in error, they were disseisors; for a survey puts the owner in possession. Their seisin then could extend no further than their actual, exclusive, occupation and possession; for the acts of a wrong doer must be construed strictly, because he claims a benefit from his own wrong. There would appear to be no clearer principle of reason and of justice, than this, that if the rightful owner is in the actual occupancy of a part of his tract by himself, or tenant, he is in the constructive and legal possession, and seisin of the whole, unless he is disseised by actual occupation and dispossession. If this were not the law, the possessor by wrong, would be more favoured than the rightful posses *466 sor. Here are two, each in actual possession and occupation of part of a surveyed tract, the owner, and an intruder. Who then is in possession of the part not occupied by inclosure by either ? The man who has no right but by disseisin of a part, or he, who is in thé actual occupancy of a part, and the rightful owner of the whole ? In this kind of mixed constructive possession, the legal seisin is according to the title. Title draws possession to the owner. It remains, until he is dispossessed, and then no further than actual dispossession by a trespasser, who cannot acquire a constructive possession, which always remains with the title.
The plaintiffs in error have no just cause to complain of the charge of the Court as to this act. Where a man claiming by improvement enters on the land of another, and has not his pretensions marked out by lines or a survey, he is only protected so far as is covered by his buildings and improvements, if there is neither survey made, nor lines, nor boundaries of such improvement. His seisin and possession do not extend beyond his actual occupancy by inclosure, and exclusive possession ; it is difficult to conceive how the protection by limitation could extend further, and protect possession which only exists in the imagination and mind of the improver, and has assumed no visible, notorious, corporeal, tangible substance.
One enters on a corner of three tracts owned by different persons ; if his constructive possession extends, as has been contended, ,to all that a legal settlement on the vacant lands of the Commonwealth would entitle such settler to, and has not defined his boundaries by notorious and visible marks, by some positive possession, which of these tracts will his constructive possession embrace ? which of these owners is to lose his land by the bar arising from the limitation ? The election would remain with the trespasser. He might set his heart on the whole of any one of these tracts, or take a part of the three, and thus aman be disseised of his land by an adverse possession, of which the utmost circumspection can give no notice by a notorious possession, which did not exist in facts
The Court wish to be understood as not giving any opinion, how far one entering on the lands of another, without official right, but merely claiming by right of possession, is protected by limitation beyond his actual inclosures, though he has lines run or a survey made, and his boundaries as- *467 c'ertained. The plaintiffs in error have not supported any of the objections to the opinion filed, and judgment must, therefore, be affirmed.
Judgment affirmed.