## Quin *against* Brady.

In an action of ejectment, where the question arises upon the validity of the original title of the parties, and not upon the extent of the claim or the Act of Limitations, the payment of taxes for the land by one party or the other cannot affect the title, and is therefore illegal evidence.

If a warrant for vacant land be put into the hands of the deputy-surveyor, and the land is bounded by older surveys made, marked upon the ground and returned, the deputy may execute such warrant by adopting the old lines and returning the survey accordingly without actually going upon the ground.

There is no law to prevent a deputy-surveyor from becoming interested in the location and appropriation of vacant lands, or for a consideration pointing them out to another for appropriation, provided he acts with good faith towards all others in his official conduct respecting the same.

ERROR to the Common Pleas of *Westmoreland* county.

Hugh Y. Brady against James Quin. This was an action of ejectment. The points made in the court below and the opinion of his Honour Judge WHITE, who tried the cause, are fully stated in the opinion of this court.

*Foster*, for the plaintiff in error.
*Beaver*, for the defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—H. Y. Brady, the plaintiff below, gave in evidence a patent to himself, dated 22d October 1823, for the land in question, about 30 acres; a warrant to himself, dated 12th September 1823; and a survey thereon of the 6th October 1823, by Isaac Moore, deputy-surveyor. The defendant, Quin, gave in evidence a warrant for 400 acres to George Clark, dated the 8th February 1785, " including his improvement interest from 1st March 1779," on which a survey had been made on the 2d June 1787, of 429 acres, by John Moore, deputy-surveyor. It appeared in the cause that in making this survey, the surveyor had included 458 acres; but this being more than 10 per cent. above the quantity called for, he cut off a part by dotting a line across, and returned 429 as above; and it appeared that Clark had patented his land as of this latter quantity.

On the 12th August 1790, he sold off 308 acres to Alexander Lemmon, which would include the part not returned, and which part is now in dispute. This deed was not recorded until 1842. The title of Lemmon was deduced to the defendant.

Several witnesses were called and proved, what was not disputed, that Clark, and then Lemmon, and next Quin, had occupied

[Quin v. Brady.]

the 308 acres, from before the date of the survey; and two witnesses proved that about 1823, Quin cleared across the dotted line on the part in dispute, and included that and a part in the returned survey in one field, and had since cleared more of the part in dispute. Brady had not attended to his land, and did not, it would seem, know its exact location or lines until 1842, when he went with a surveyor, and they called on Quin for information; he showed his title, and among other papers an old draft of the George Clark survey, and on it the part in question cut off by a dotted line. On the 26th March 1842, Quin took out a warrant for 29 acres, to pay interest from 1st March 1823; and on the 12th April 1842, a survey was made on it of 30 acres 19 perches, by J. Meckling, deputy-surveyor. Meckling was examined, and swore that in making this survey he examined carefully and found marked lines of old surveys, but no marks of the date of Brady's survey; the lines of this and Brady's survey were the same.

An instance of what useless evidence will be thrust before a court and jury occurred here. The neighbours, none of whom, however, lived in sight of the lines, were called and proved that none of them saw Isaac Moore run the survey of Brady. Now I suppose nobody now alive saw George Clark's survey made; and probably there are not three surveys in the township made thirty or twenty years ago, which would be good if you must produce persons who were present and saw the lines run and marked.

The defendant then offered to prove that the land in dispute had been assessed as Quin's, and he had paid the taxes; the court, on objection, overruled the evidence, and an exception was taken.

The judge was no doubt weary of having useless testimony, and he rightly rejected the evidence. The defendant had already proved that he had cleared and cultivated a part of the land. Paying taxes does not give title; it may show a claim, but this is not necessary where he who paid is in possession; such evidence is sometimes given to show how much an improver, who has no survey, claims; but I repeat, it does not give title. If he in possession pays taxes twenty-one years, and no suit is brought against him, he will hold the land; this is not by paying taxes, but by the Statute of Limitations. It was proved that Brady had said, that in the days of Isaac Moore, he, Moore, had come to the store of Brady's father, and said if he would give him a coat or suit of clothes, he would inform him where a piece of vacant land lay, and thus he got the warrant; and it was patented when his father, James Brady, was Secretary of the Land Office.

The court were requested to charge the jury on two points.

1. If the court believe from the evidence that Isaac Moore was interested and had contracted to sell the land to H. Y. Brady for a coat or suit of clothes, in such circumstances the survey would be void. The court answered in the words of the point, only concluding that it would not be void. A judge once said some-

[Quin v. Brady.]

thing about a survey made by a deputy-surveyor for himself being void, but only one judge. If land was clear of other claims, there never was any law or regulation of the Land Office forbidding a deputy-surveyor to take it, or point it out to another.

2d point. The survey of Isaac Moore, deputy-surveyor, and return thereof, is *primâ facie* evidence of the making of such survey; but that such evidence may be contradicted and overcome by direct testimony, or circumstantial evidence; and that if the jury believe Isaac Moore was not on the ground as deputy-surveyor, but made the draft in his chamber and returned it, in such case it is null and void. The court say, " In answer to the second point, we instruct you that the return by the deputy-surveyor is *primâ facie* evidence of the making such survey, because he is a sworn officer, and the presumption always is that the officer does his duty; but that any one affected by it will be allowed to impeach the deputy-surveyor's return within 21 years, either by direct or circumstantial testimony that the surveyor never was on the ground and that in point of fact there is no such survey; and that as a general rule the law is as stated in the last clause of the proposition. But, like all general rules, there are exceptions, and if the three sides of this survey were the boundaries of the adjoiners, as returned in the official surveys, and these boundaries actually marked on the ground, Isaac Moore might adopt these lines, and might draft his survey from them, and return it to the Surveyor-General's Office without going on the land, and it would be a good and valid appropriation of the land in dispute.

The court delivered to the jury an elaborate and learned charge in accordance with what is said in answer to the second point above, only they added that George Clark having taken out his patent on his survey as returned, was bound by that, and could not claim land not in it.

The counsel here assigned four errors.

1. The first is as to rejecting evidence as to payment of taxes, which is answered already. 2, 4. The 2d and 4th are the same in substance, and will be answered together. 3. The 3d is to that part of the charge of the court relating to Clark and the defendant being bound by his patent. I thought that a survey returned and filed, and much more, a patent taken out on it, were considered by our law as record evidence of title, and that all might not depend on parol; and that this had been so often settled as not to be doubted or to have been debateable for the last thirty years. Even where a survey is returned, no change can be made except on an order of the board of property. After a return and patent on that, and an acquiescence for many years, it must be a singular case in which any board of property will throw all this open again. That board cannot do it, if in the mean time a title to the land included in the return and patent has been acquired by any other person. The remaining assignment of errors I shall answer by

[Quin v. Brady.]

citing two or three cases, in which all the points in this cause were settled by our predecessors.

In 6 *Binn*. 39, we find the case of *Werdman* v. *Felmly,* which is this case in all particulars, only stronger. William Mackey, in 1774, had on the same day made a survey for himself in the name of Janet Sharon, and one for General Potter in the name of Robert Mackey. They were not returned until 1783, and in the returns of survey, Mackey and Sharon called for each other; but Mackey, on calculating Janet Sharon, found the lines contained 411 acres on a warrant for 300; he therefore cut off, by protraction 100 acres, and still he returned Janet Sharon as adjoining Mackey. As soon as the office opened in 1784, he took in his own name a warrant for the 100 acres. The return of survey was made without re-marking the lines, and probably without going on the ground. The late Judge DUNCAN and I were counsel for Werdman. Our courts, in that part of the State, had been much engaged for many years in trying titles to land, and this had so often been settled, that it was not, in the Supreme Court at least, made an objection; nor was it objected that the deputy-surveyor who made the surveys and threw out a part of one, had himself taken a warrant for the part thrown out, unless his conduct was fraudulent. The law was laid down as it was in this case by the court below.

In *Lambourn* v. *Hartswick,* (13 *Serg. & Rawle* 113), the other point as to a survey called for being returned, and also the necessity of re-marking old lines, was decided. That was a second trial; Hartswick had settled under Lambourn, and Miles had recovered; and he had leased under Miles. The property was valuable; the cause was elaborately tried and fully considered, and the law settled as in this case; and we could not do anything more injurious to the country than open again to controversy, points relating to land titles which have been long since decided and acted on.

Judgment affirmed.