C. BALLARD ET AL. V. E. W. PERRY'S ADMINISTRATOR.

Where, in a suit for land against several defendants, the causes of action pre-
sented against them were distinct and separate, and especially when one of
the defendants claimed not only under a common source of title with his
co-defendants, but also independently of them under the title asserted by
the plaintiff, a severance should have been granted to such defendant upon
his motion therefor.
No objection on the score of time lies to a motion for a severance, although

it was filed but a few days before the trial, and does not appear to have been acted on by the court until the cause was called for trial, there being nothing to indicate that the plaintiff could be prejudiced by the delay in the action on the motion.

But although a severance was improperly refused, it may well be questioned whether the judgment should be reversed on that account alone, when it is not apparent that the refusal of the motion operated to the injury of the defendant who sought the severance.

If the certificate of the officer taking depositions shows a substantial, though not a literal, compliance with the directions of the statute, the depositions should not be excluded on account of the certificate. No technical form of certificate is prescribed or required. (Paschal's Dig., Art. 3728, Note 846.)

There is no force in the objection to a deposition, that it was taken by an officer who was interested in the suit, when it is apparent that his interest was with, and not against, the party who interposed the objection. (Id.)

A deposition should not be excluded simply on account of interlineations and erasures, when the context and connection in which they are placed clearly show that they were made at the time when the deposition was taken, and there being nothing indicative of a fraudulent alteration or tampering with the deposition. (Id.)

No reason is perceived why a subscribing witness to an instrument is not competent to prove it for record, although he was not present at its original execution, but was subsequently procured by the maker of the instrument to subscribe it as a witness, and to prove the grantor's acknowledgment of it for the purpose of registration. (Paschal's Dig., Art. 4977, Note 1088.)

In proving an instrument for record, the witness is not required to testify to its date or to the date of his signature to it as a witness; and it cannot be pretended that a second acknowledgment of an instrument by the maker impairs its validity. Such an acknowledgment would be admissible at common law against the maker and all parties claiming under him subsequently to it. (Paschal's Dig., Arts. 4796, 4797, Notes 1086, 1087.)

The probate and record of an instrument entitled to registration supplies the place of the common-law proof of its execution, and when such an instrument has not been impeached in the manner provided in the statute, there is no reason why it should not be held as effectual as if its execution had been established according to the common-law rules of evidence. (Paschal's Dig., Art. 3716, Note 840.)

If the defendants relied on an outstanding title to defeat the plaintiff's recovery, it would be competent for the plaintiff to rebut such a defense by introducing a conveyance of such title made to him since the commencement of the suit.

Or, if the plaintiff instituted his suit on an equitable title, and after the commencement of the suit he acquired the legal title in conformity with his equitable right, there could be no valid objection to his introducing his legal title in evidence at the trial.

Where a party has acquired a legal title pending the suit, if adverse rights are claimed to have been acquired prior to the execution of the deed conveying the legal title, and if the deed contain recitals of an equitable title which might influence or mislead the jury, the deed should only be admitted with a full and clear explanation of its legal import and bearing on the case; and, besides such explanation, the court should, if requested, give to the jury a proper instruction relative to the effect of such evidence.

A notary's certificate of probate of a deed for record is defective if not authenticated by his seal. (Paschal's Dig., Art. 4684.)

Where the instrument offered in evidence was not the original deed itself, but a certified copy from the records in the county clerk's office, by which copy it appears that the original was proved for record before a notary, who stated in his certificate that he thereto affixed his official seal, it seems that, from such statement in the certificate, and from the fact that the clerk admitted the deed to record upon the certificate, it may be presumed that the notary's seal was properly attached to the original certificate, although no evidence of that fact appear on the face of the copy of the record. Under such circumstances, it may be inferred that the clerk who recorded the deed did not suppose it necessary to put upon the record the characters usually employed to indicate the seal affixed to the original certificate.

The fact that a party, out of abundant caution, has taken the deposition of a witness a second time, constitutes no objection to his introduction of the first deposition. If there be any discrepancies between the two depositions, the opposite party may avail himself of them to lessen the weight of the testimony with the jury. (Paschal's Dig., Art. 3726, Note 844.)

It was not error to exclude evidence offered for the purpose of raising a presumption of a grant of land, when the facts relied on were merely the preliminary steps towards obtaining a grant, and corresponding circumstances consistent with and usually accompanying such steps, and when the other evidence showed that no grant was procured. There are cases in which a grant may be presumed, although not believed ever to have existed, but this is not a case of that character. (Paschal's Dig., Art. 2624, Note 1033, pp. 769, 770.)

A letter offered in evidence was properly excluded when the only proof of its authenticity was that the signature to it resembled one of the same writer which was admitted to be genuine.

An objection to a deposition that the witness had not answered the cross-interrogatories, is not made in proper time or manner if offered orally after the deposition has been partly read to the jury. (Paschal's Dig., Art. 3733, Note 849; Art. 3742, Note 851.)

It was not proper for the court of its own motion to exclude depositions simply on the ground that enough evidence had been adduced on the subject to which the witnesses testified, which subject was one of the controverted questions in the case, and to be determined on the preponderance of conflicting proof.

It was error to instruct the jury, that a prior possession by the plaintiff under a superior title would deprive the defendants of the protection of the statute of limitation to any portions of the land held by them under subsequent entry and actual and exclusive adverse possession for a length of time sufficient, under other circumstances, to have completed the bar of the statute. (Paschal's Dig., Arts. 4621, 4624, Notes 1030, 1033.)

Although the plaintiff's superior title would give him constructive possession to the extent of its boundaries, yet it is equally clear, that the entry and actual adverse occupation of the defendants were an ouster of the plaintiff to the extent of the actual and exclusive adverse possession of the defendants.

The constructive possession of the plaintiff was as completely abrogated by such adverse occupation as though the defendants had forcibly deprived him of an actual possession.

APPEAL from Gonzales.    The case was tried before Hon. FIELDING JONES, one of the district judges.

This was an action of trespass to try title, and was originally instituted by E. W. Perry, in the District Court of Lavaca county.    The property in controversy was a league and labor of land lying in the latter county.    The petition was filed on the 15th of April, 1856, against C. Ballard and some ten other persons as defendants.    The plaintiff's title will be found sufficiently described in the case of Howard v. Perry, 7 Tex., 259, in which case the present plaintiff was the defendant.    Howard and wife, the plaintiffs in that suit, were made defendants in this, and it was alleged in the petition that the other defendants claimed under them. The case in 7 Texas shows the character of the imperfect grant to Hibbins, under which the Howards claimed, and of which mention is made by the court in this case.

The case, as there decided, turned upon the inchoate or imperfect character of the Hibbins grant, and it is one of the precedents which holds, that such grants were at most but equities against the conscience of the body politic, and not titles which were recognized by the constitution and laws of the republic of Texas, so as to give them judicial standing in the courts.    (Paschal's Dig., Note 150, p. 40.) It was then also decided, that the chief clerk of the gen-

eral land office, in the absence of the commissioner, &c., may certify an archive or record in the general land office; and that, having certified, the presumption is that the contingency contemplated by the statute existed. (Id., Note 209, p. 72.) A point was also decided in reference to the equities of settlers and locators. (Id., Note 985, p. 722.) And it was also here first ruled, that the printed book of recommended certificates, if published by authority, may · be evidence for some purposes, but does not furnish the proof upon which the surveyor is required to act; but that the act is directory, and a surveyor, who, upon his knowledge of the fact, however acquired, should survey upon a recommended certificate, would not in the least offend against the "true intent and meaning of the act," (Id., Art. 4537, Note 1002;) and that this act, requiring certain evidence of the genuineness of the certificate, was not intended to destroy acts done and rights acquired by virtue of legal and genuine certificates, but to protect them against the illegal appropriation of the public domain. (Id., Art. 4538, Note 1003.) And that, after such genuine certificates had been located and rights acquired under them, they were protected by constitutional guaranties, and could not be overridden by a joint resolution of the legislature, which confirmed a void incipient grant, which was only founded on an unauthorized survey, and no title; that there was not equity to save. (Id., Art. 5303, Note 1149.)

This able opinion is found in Howard v. Perry, 7 Tex., 259 to 268. It determines the right in favor of the location as against the incipient Hibbins grant, and the joint resolution intended to confirm it, but which resolution saved the rights of third persons.

The record in this second suit is very voluminous, and the pleadings of the several defendants are numerous and reiterated. Howard and wife plead the statutes of limitation in every form, and also set up the Hibbins claim,

which it appears had vested in Mrs. Howard, as the widow and heiress of Hibbins. The other defendants also plead the several statutes of limitation, and claimed different parcels of the land under deeds from Howard and wife, whose claim they asserted as a title good in itself, and also as the basis of their pleas of limitation of three and five years.

At the spring term, 1857, the venue was changed to Gonzales county, on the application of the plaintiff, who at the same term replied to the various answers of the defendants, and alleged that the Hibbins title, set up by the defendants, was and ever had been null and void, and that the "joint resolution for the relief of the heirs of John Hibbins," passed by the Congress of the republic, and approved on the 2d of February, 1844, did not impair, or purport to impair, the rights of the plaintiff, whose title to the land had accrued to him long before the adoption of that resolution. [The case in 7 Texas contains a copy of the resolution in question.]

The plaintiff further alleged, that since the filing of his original petition, his vendor, Presnall, in pursuance of the original transfer of his certificate, had executed to the plaintiff a regular deed for the land in controversy, which, as well as the patent to Presnall, is relied on as further evidence of title in the plaintiff. And plaintiff denies that the land in question was ever surveyed for Hibbins, as is erroneously stated in the joint resolution referred to, and alleges that, if Hibbins ever applied for the said land, such application was fraudulent and void; that the said Hibbins, at the time of his pretended application, was a single man, and not entitled to a head-right of more than a third of a league; so that here was an effort to go behind the joint resolution, to show that the legislature had been fraudulently deceived as to a fact, and to prove, as was attempted in the case of Howard v. Colquhoun, *ante* p. 134, that the grantee, being a single man, had not the capacity to take

so much land under the colonization laws.    (Paschal's
Dig., Art. 576, Notes 356, 359.)

On the 11th of April, 1859, the defendant, C. Ballard,
amended his answers, and alleged that on the 4th of Feb-
ruary, 1838, the plaintiff, Perry, executed to Luke Presnall
a bond, covenanting to convey to said Presnall one-half of
the land for which Perry might procure a patent by virtue
of Presnall's head-right certificate for a league and labor,
under which certificate, and the patent issued thereon, the
plaintiff now claims.    That on the first Tuesday in Janu-
ary, 1859, the half interest of Presnall in the land in ques-
tion was sold by the sheriff of Lavaca county, under an
execution emanating from a judgment against Presnall in
the District Court of Nacogdoches county; that one John
W. Kelley became the purchaser of the said half interest
at the sheriff's sale, and has since conveyed the same to
this defendant.    Wherefore this defendant prayed that his
interest thus derived be allowed him, besides the parcels,
amounting to one thousand three hundred and seventy-
three acres, which he claimed under deeds from Howard
and wife.

On the 9th of April, 1860, the defendants filed a joint
amended answer, in which they set forth that John Hib-
bins, a colonist in Stephen F. Austin's colony, on or about
the 3d of December, 1832, presented himself, with his
proper application in writing, to Miguel Arcieñaga, the
commissioner of said county, and prayed the grant to him
of the land now in suit; that said Hibbins then had all the
legal qualifications entitling him as a colonist to the grant
of a league and labor of land, having permanently settled
in Texas, and being then the head of a family; that the
said Austin reported the said Hibbins as a colonist pos-
sessed of such qualifications, and the said Hibbins, with
the approbation of the said Austin, selected the land now
in suit; that about the 5th of December, 1832, the com-
missioner, Arcieñaga, admitted the application of Hib-

23—xxviii

bins according to law, and ordered the said land to be surveyed, in order that the corresponding title might issue to Hibbins; that the order of survey was duly made in accordance with such order, and William P. Hensley, deputy under Thomas H. Borden, the surveyor of said colony, surveyed the said land for said Hibbins in the early part of the year 1833; that the field-notes of the survey were regularly entered, and became an archive of the colony; that Hibbins paid all the government dues and surveyor's fees, and took possession of the land under his title and relying on the good faith of the government; and that he occupied the land until his death, claiming it as his property against all the world; that ever since the survey of the land for Hibbins the tract has been notoriously and publicly known and called as the "Hibbins' league;" that after the death of Hibbins, in 1835 or 1836, his widow intermarried with one Squinnett, and continued to occupy said land, and that she, with her present husband, Howard, still retained the possession, use, and enjoyment of the same, together with their vendees and tenants, down to 1857; that the plaintiff, at the time of his pretended survey, in 1840, knew of the rights of Hibbins and those claiming under him; that the archive title to Hibbins was made out and signed by Arcieñaga, conceding and putting Hibbins in possession of the land, and that such title was among the archives of Austin's colony, and afterwards, and as late as 1841, was in the general land office of the republic; but that the portion of the title usually called the act of possession has been lost or destroyed, and cannot be found; that the *testimonio* to Hibbins was regularly issued by Arcieñaga, but about the year 1836 Hibbins was killed by the Indians, and all of his papers were then carried off or destroyed, the *testimonio* among the rest; and the defendants say that the said Hibbins and his heirs, by virtue of these facts, were entitled to the land in controversy long before the pretended location and survey of the plaintiff; and that the joint resolution of

the congress of the republic vested in the heirs of said Hibbins and those claiming under them a full and perfect title to the land, and related back to the original title of said Hibbins, and ratified and confirmed it from its inception.

At the spring term, 1861, the plaintiff amended his petitions, and alleged that it was not true that Hibbins was a colonist in Austin's colony, or that he had the necessary qualifications of a colonist, to entitle him to a league and labor of land at the date of his application therefor; that, on the contrary, the said Hibbins was then a single man, but fraudulently represented himself to be a married man; that the *empresario* detected the fraud before the title was extended, and consequently a grant was refused to Hibbins; that the pretended title to him was nothing but a blank form, never delivered to him, and no *testimonio* was ever issued to him.

And further the plaintiff alleged, with reference to the claim of any of the defendants through or under Luke J. Presnall, that he, the plaintiff, is the owner in full of the said Presnall's head-right league and labor; that he purchased it from the said Presnall in 1838, for the sum of $1,000, and paid the same at the time of the purchase; that he located the said head-right certificate in 1839 on the land now in controversy, and in 1840 had the same regularly surveyed and the field-notes duly returned to the general land office; that ever since May 1, 1840, he has held peaceable, adverse, and continuous possession of said land under the said certificate, location, survey, and transfer, and since October 9, 1852, had so held said land under a patent from the government and a deed from said Presnall, and claimed the said land adversely to said Presnall, the defendants, and all other persons.

The plaintiff proceeded to set up the several statutes of limitation in his own behalf, as well as in bar of the defendants, and to allege sundry other matters not necessary to be noticed.

At the same term, the defendant, C. Ballard, amended, and alleged title in the land by purchase from one Narcissa Eddings, formerly the wife of the said Luke J. Presnall.

It will thus be seen by the pleadings that the issues were:

1. As to the original validity of the Hibbins grant, by proving the final act and *testimonio* by parol.

2. A point already determined, as to the effect of the joint resolution of the legislature upon the Hibbins grant.

3. An assertion on the part of the plaintiff, that if there ever was a grant to Hibbins, it was fraudulent and void, because Hibbins was not the head of a family entitled to a league of land under the colonization laws.

4. There was a contest as to who was entitled to the Presnall certificate, the plaintiff claiming it under a deed from Presnall in 1838; some of the defendants claiming one-half under a sheriff's sale as the property of a locator; and the defendant, Ballard, claimed that he purchased it from Narcissa Eddings, formerly the wife of Luke J. Presnall, the grantee.

The defendant, Ballard, also moved for a severance, alleging in behalf of his motion that he claimed by different titles from his co-defendants, and in hostility to them; that a general demand for damages is made against all the defendants, and some of them are insolvent; that his rights can only be properly protected by a severance. This motion was filed on the 9th of April, 1861, three days before the trial. It was overruled by the court, on the ground that it was not filed in time, and there did not appear to be a necessity for a severance. The defendants excepted.

The cause came to trial on the 12th of April, 1861. There is an immense mass of evidence in the record, but reference will be had only to so much of it as relates to the rulings of this court.

The depositions of the witnesses, Robinson, Crosby,

Allen, Turner, and Butler, were introduced by the plaintiff. The objections to their admission made by the defendants cannot, within any reasonable space, be more specifically shown than they are in the opinion. In his endorsement on the deposition of Crosby, the postmaster who forwarded the same did not date his certificate on the envelope, which was one of the objections to the deposition. The officer who took the deposition of Turner was J. J. Ballard, one of the defendants in this suit.

The plaintiff offered in evidence the original bond or transfer, executed by Presnall to him on the 4th of February, 1838. The name of W. B. Perry appeared to this instrument as a subscribing witness, and on the 11th of July, 1855, he made affidavit before the county clerk of Colorado county that Presnall acknowledged before him that he had executed and delivered the instrument for the considerations and purposes therein stated, and that he, W. B. Perry, signed the same as a witness at the request of Presnall. The affidavit did not state the date of the acknowledgment of Presnall, or that of the signature of the witness. The defendants objected, that the instrument was not properly proved up for record. It was admitted that W. B. Perry was not one of the original subscribing witnesses at the time the instrument was made, but that he signed it afterwards at Presnall's request, and as a witness to his acknowledgment of it. The objection was overruled, and the defendants excepted.

The plaintiff offered in evidence a deed to him from Presnall, dated April 6, 1858, being since the institution of this suit. This deed recited that Presnall had made to the plaintiff the instrument of February 4, 1838, as a conveyance of his head-right of a league and labor, to which he was then entitled; that a certificate therefor was issued to Presnall by the board of land commissioners of Sabine county, and was by him, in pursuance of his above-men-

tioned conveyance, delivered to the plaintiff, Perry; that Perry located the same at his own expense, and at his own expense had the same surveyed and patented, the patent issuing on the 9th of October, 1852, in the name of Presnall; that Perry had paid to him the purchase-money of $1,000 at the time of such original sale and conveyance. In consideration of all which Presnall confirmed the original sale, and conveyed to Perry the land so located and patented, which was the same now in controversy. The defendants objected to the admission of this deed, because it · was executed after the filing of the suit and subsequent to the accrual of defendants', Ballard's, rights claimed under Presnall, and because no notarial seal appeared to Presnall's acknowledgment of said deed; and, further, that the recitals in the deed were not evidence against the defendants, as they related back to periods anterior to the accrual of defendants', Ballard's, claim under Presnall. The court overruled the objections and admitted the deed, but ruled that its recitals were not evidence against Ballard. The defendants excepted. The first charge asked by defendants and refused by the court was with reference to this deed, and was to the effect that its recitals should not influence the jury in their verdict.

The defendants offered a deposition of Henry Wageman, and the plaintiff moved its exclusion, on the ground that objections had been filed to it at a former day, and the defendants had taken a second deposition of the same witness, thereby raising a presumption that the objections had been sustained and the first deposition suppressed. There was no record evidence of any ruling having been made on the objections to the first deposition, and the defendants asked the court to rule upon them under the objections now being urged to it. But the court refused to consider the objections originally filed against the first deposition, and sustained the present objection of the plaintiff, based on the assumption that the deposition had

been suppressed at a former day. The deposition being thus excluded, the defendants excepted.

The defendants, for the purpose of raising a presumption of a grant to Hibbins, their vendor, of the land in controversy, offered in evidence the joint resolutions of the congress of the republic, already referred to, and a grant to the heirs of Hibbins filled up by the commissioner of the general land office in accordance with those resolutions; also sundry land-office copies of adjoining surveys, calling for the Hibbins survey, two land-office plats of the Hibbins survey, the blank form of a grant, signed by Arcieñaga, and called the Hibbins title, a survey of the land in controversy, certified by the commissioner of the land office as the original field-notes of the John Hibbins league, and stated in the bill of exceptions to have been made by W. R. Hensley, a deputy surveyor, on the application of said Hibbins. In the same connection, the defendants offered the depositions of Joel Ponton and six other witnesses to prove that Perry, the plaintiff, before locating the Presnall certificate on the land in controversy, had knowledge of Hibbins' claim to it. The object of the defendants, as stated in their bill of exceptions, was to show by this evidence, first, that Hibbins had a full and complete equity in the land prior to the adoption of the joint resolution by the congress of the republic; and, secondly, as evidence for the jury to consider in determining whether a *testimonio* or grant had not actually issued to Hibbins in his lifetime. Hibbins was killed by Indians in 1835 or 1836. The foregoing documents and depositions were offered both separately and in connection with each other, but the plaintiff objected that the documentary evidence, taken separately, was of no legal effect, and, taken in connection with the testimony offered, the whole presented neither a legal nor equitable title in Hibbins or his heirs. The court sustained the objection, and ruled that to prove title in Hibbins, the defendants must

show a certificate to him from a board of land commissioners, under the law of 1837, and without such a certificate the Hibbins claim could not be regarded as even an equity. All of this evidence was therefore excluded, and the defendants excepted.

The defendants then offered several witnesses to prove that a letter to a Mr. Murphy, dated February 5, 1842, and signed E. W. Perry, was in the handwriting of the plaintiff. This letter appears to admit a right in Presnall's heir to a part of the land in controversy. The witnesses having stated that they were not acquainted with the handwriting of plaintiff, they were asked to compare the signature to the letter with a signature of the plaintiff admitted to be genuine, and the witnesses stated there was a resemblance between the two signatures, but they could not state that they were made by the same writer. On this proof, and in consideration of the age of the letter, the defendants proposed to read it to the jury. But the court held the proof insufficient, and excluded the letter, to which the defendants excepted.

The defendants having closed in chief, the plaintiff proceeded to read the deposition of J. W. Mays, to which, while the 3d interrogatory was being read, the defendants objected, on the ground that the witness had not answered their cross-interrogatory, whether he was interested in this suit. The court ruled that the objection came too late, and admitted the deposition, to which the defendants excepted.

The opinion of the court sufficiently shows such other facts relating to the case as appear to be called for.

The jury returned a general verdict in favor of the plaintiff for the entire land in dispute, and judgment was accordingly rendered for him against all the defendants. A new trial was asked and refused, and the defendants appealed, and assigned for error the various rulings of the court. These objections were, 1st, to the admission of

depositions taken under the statute; 2d, to the force to be given the proof of circumstances from which it was sought to presume a title, when the record showed that there was none; 3d, as to the protection given under the statute of limitation; 4th, which involves some of these questions, as to the correctness of the instructions upon the facts proved in the case.

*A. H. Phillips*, for appellant, C. Ballard, contended that the joint resolutions of the congress of the republic constituted a sufficient basis for the defense of three years' limitation, and, in connection with Ballard's deeds from Howard and wife, for the five years' limitation; and that the court below erred in its charge respecting the insufficiency of Ballard's possession to sustain the defense set up by him, the law being that a possession under the better title extends only to so much of the land as is not in actual possession of the adverse party. (Ang. on Limit., 442; 4 Wheat., 213.) Counsel also insisted that the court erred in its rulings on the evidence, and cited various authorities in support of his positions.

*A. N. Mills*, also for appellants, cited Jones v. Menard, 1 Tex., 788, with reference to inchoate grants. As to the claim and possession required to support the defense of limitation, counsel cited 10 Peters, 412; 11 Id., 41; Sutton v. Carabajal, 26 Tex., 497; Ledyard v. Brown, 27 Id., 393. As to how far an ouster is effected by an adverse possession, counsel cited 4 Peters, 480; 5 Id., 320; 4 Wheat., 213; 13 Tex., 94; 8 Cranch, 229.

*J. T. Harcourt* and *W. H. Stewart*, for appellee.

MOORE, C. J.—The bill of exceptions to which our attention is called by appellant's first assignment of error presents quite a number of exceptions, which were taken to

various rulings made during the progress of the trial of this cause in the District Court. These questions, however, are neither difficult nor important, and a brief summary of our views on them, in the order in which they are presented, will suffice for their disposition:

1. The motion of appellant for a severance should have been granted. The causes of action presented in the petition are in the main distinct and several as to the different defendants. In addition to this, the appellant, though claiming under a common source of title with his co-defendants, also claimed independently of them an interest in the land, under the title asserted to it by the plaintiff. We see no reason why the motion should have been refused on account of the time at which it was made. It seems to have been filed several days before the trial of the cause. If the court were not called upon to act upon it until that time, we cannot perceive that any injury could probably accrue to the plaintiff from this delay, or from the fact that he was not notified at an earlier stage of the progress of the suit that a severance would be asked for by the appellant. Although the motion should have been granted, if this were the only error in the case it might well be questioned whether the judgment should on account of it be reversed, unless there be reason to suppose that appellant had been hindered or embarrassed in a full and fair trial on the merits of his cause, or that injury to him of some character had probably resulted from the refusal of the court to grant the severance.

2. The exceptions to the depositions of the witnesses, Robinson, Crosby, Allen, Turner, and Butler, were properly overruled. The certificates of the officers before whom they were taken show a substantial, though not a literal, compliance with the directions of the statute. The law requires the answer of a witness to interrogatories shall be made under oath in presence of the officer who takes the depositions. If the certificate show that this has been

done, it is in this particular sufficient. No technical form of certificate is prescribed or required. · The indorsements on the depositions show that they were delivered by the officers who took them to the postmasters, and that they were transmitted by mail to their places of destination. This is all that the statute directs. The record shows that notice and a copy of the interrogatories for Allen were waived, and the commission issued by consent. The objection on this account could not therefore be maintained. Nor is there any force in the objection, that the officer by whom Turner's deposition was taken "was an interested party on the record." His interest was with the defendants, by whom the objection was made, and not with the plaintiff, for whom the deposition was taken. The depositions should not have been excluded simply on account of the interlineations and erasures. The context and connection in which they are placed evidently show they were made at the time the depositions were taken. It was not charged, nor in fact was there anything disclosed upon which to base the slightest suspicion, that there had been any fraudulent alteration or tampering with the depositions.

3. The bond from Presnall to the plaintiff, Perry, of February 4, 1838, was properly received in evidence. We see no valid objection to its probate for record by W. B. Perry. He was made a witness of its execution for the purpose contained and expressed in it by the parties. We cannot perceive why he could not testify to the facts which authorized its admission to record. A witness for this purpose is not required to testify with reference to the date of the instrument, or that of his signature to it as a witness. It certainly cannot be said that the second acknowledgment of the execution of an instrument impairs its validity. If its execution as a common-law instrument were to be proved, the acknowledgment of the grantor, in cases where resort could be had to secondary evidence,

would be admissible to establish its validity against the grantor, and all parties claiming under him subsequently to such acknowledgment. The probate and record, unless impeached as provided in the statute, are intended as a substitute for, and to supply the place of, the common-law proof of execution, and there can certainly be no good reason why it should not be held as effectual in this case as if its execution were established under the common-law rules of evidence.

4. The deed from Presnall to the plaintiff, of April 6, 1858, added nothing to the strength of the plaintiff's case. Its recitals were certainly not evidence against the appellant, nor could it have authorized a recovery by Perry, if he had no cause of action at the commencement of his suit. If the defendants had relied upon an outstanding title in Presnall to bar the plaintiff's recovery, it might have been legitimately received to repel such defense. Nor is there any valid objection to the introduction of the legal title acquired by the plaintiff after the commencement of his suit, in conformity with his pre-existing equitable right. But in such cases, where adverse rights are claimed to have been acquired prior to the execution of the deed, and it contains recitals which might influence or mislead the jury, it should only be admitted with a full and clear explanation of its legal import and bearing in the case. And although the court, in overruling an objection to such a deed, may have correctly announced the purpose for which it could be received, if, on the final submission of the case to the jury, a proper instruction as to its effect was asked, it should be given. If, therefore, the refusal of the court to give the first charge asked by the defendants had been presented by a proper assignment, we should have held there was error in the action of the court in this particular.

This deed was also objected to for want of a seal to the notary's certificate of probate. The objection, if es-

tablished, should have been sustained. The instrument offered in evidence was not the deed itself, but a certified copy of it, from the records of the office of the county clerk. The fact cannot, therefore, be determined by an inspection of the paper presented to the court. But, as the certificate of the notary declares that he has affixed his official seal to it, and the clerk should not have recorded the deed unless this were the case, we think it may be presumed that the seal was properly attached, although in the copy from the record its place is not indicated by a scroll and the initial letters, [L. S.,] as is customary in copies of sealed instruments. The clerk who recorded this deed may not have supposed this necessary or proper.

5. The deposition of Wageman should not have been excluded for the reason stated in the bill of exceptions. The only legitimate deduction from the facts stated is, that the defendants took the second deposition out of abundant caution. If the objections to the first deposition were not valid, the defendants should not have been deprived of the benefit of the testimony because they had used the precaution of taking the second deposition. If there were a discrepancy in the depositions, the plaintiff might in the proper manner have availed himself of the fact to lessen the weight of the testimony with the jury.

6. The court did not err in refusing to admit the testimony offered to raise the presumption of a grant of the land in controversy to Hibbins. The facts relied upon were merely the preliminary steps in obtaining a grant, and corresponding facts and circumstances consistent with and usually accompanying such preliminary steps. The evidence offered shows that Hibbins was equitably entitled to have received a grant, and that one would have been made to him if the proper diligence had been used to procure it; but it does not repel or negative the abundant proof which the defendants themselves offer, showing that this equitable right was not consummated into a grant. A

grant may be presumed in some instances, even if it is not believed in fact ever to have existed, but there is no pretense that this is a case of that character.   The only presumption of a grant to be made in this case is, more properly speaking, a conclusion of fact, deduced from circumstantial evidence, proving the former existence of a grant now lost or destroyed.   A deduction of this kind does not legitimately flow from the evidence proposed, and therefore, as we have said, it was properly rejected. In doing this the court seems to have gone further than was necessary or proper in announcing the opinion that defendants could only establish a title in Hibbins by a certificate under the land law of 1837.   But if the defendants had other evidence than that offered to establish a title, they did not even suggest it, and we cannot suppose they were prevented from doing so by this merely abstract opinion of the court.

7. The testimony adduced was not sufficient to establish the authenticity of the letter claimed by the defendants to have been written by the plaintiff to Murphy, and it was properly excluded.

8. And the objection to the deposition of the witness, Mays, was properly overruled, because not made in the proper time and manner.

9 and 10. But we see no reasons why the depositions of McKimpson, Books, and Spaulding, offered by the defendants, should not have been permitted to go to the jury. Especially as the plaintiff had introduced as evidence McKimpson's declarations, while in possession of the land, to show the character of his possession, it would seem the defendants might very properly have used his deposition as evidence to the same point.   The testimony may be only cumulative, but as both sides seem in their manner of presenting the case to rely as much upon the number of their witnesses as the intrinsic strength of their testi-

mony, it is not seen that those on the one side more than the other should have been excluded.

The second error assigned is, that the verdict and judgment in favor of the plaintiff for the entire tract of land in suit are contrary to law and evidence. The fourth assignment presents substantially the same question in the more specific form of an objection to the instruction of the court to the jury, to the effect that prior possession of the land in dispute by the plaintiff would deprive the defendant of the protection of the statute of limitation to any part of it, under a subsequent entry and actual and exclusive adverse possession of a part of the tract for a sufficient length of time under other circumstances to have completed the bar of the statute.

This charge is unquestionably erroneous. The instruction is based of course upon the supposition that the plaintiff's entry was under the superior title; this, without dispute, gave him constructive possession to the extent of the boundaries defined in his title. But it is equally clear that the entry and actual occupation of the defendants were an ouster to the extent of their actual and exclusive adverse possession. The constructive possession which in such case the plaintiff held prior to the entry by the defendants is in fact and law as completely abrogated and destroyed as if the defendants had forcibly deprived him of an actual possession. (Barr v. Gratz, 4 Wheat., 213; Codman v. Winslow, 10 Mass., 151; Mathews v. Ministers of Trinity Church, 3 Serg. & Rawle, 509; Hall v. Powell, 4 Serg. & Rawle, 465; Orbison v. Morrison, 1 Hawk., 468; Brimmer v. Proprietors of Long Wharf, 5 Peck, 131.)

The other assignments of error are too general to require their examination by the court. But for the errors already indicated the judgment must be reversed, and the cause

REMANDED.