## No. 6157.

## CLAY COUNTY LAND AND CATTLE COMPANY *v.* W. J. WOOD ET AL.

1. SEVERANCE IN EJECTMENT.—Where defendants in trespass to try title claim separate tracts of land sued for they may sever in their defense. Nor is such right lost by their pleading jointly not guilty.

2. PLEADING TITLE BY PLAINTIFF IN EJECTMENT.—The plaintiff alleged ownership in fee of the land sued for. On the trial plaintiff offered, to support his title, a contract of sale by which possession of the land was conceded. The purchase money payable in installments— the right to rescind reserved upon the failure to pay any of the installments—and reciting that the vendor retained the legal and equitable title in the land until it should be paid for. The vendee entered into possession and paid all the installments due upon the land, *held* (1) "That such title was admissible under the allegation of ownership in fee, etc.; (2) that such title was sufficient to recover against one not showing a better title."

3. ACTUAL SETTLERS UPON COUNTY SCHOOL LANDS.—Section 6, article 7, of the State Constitution on the subject of county school lands vesting title thereto in the counties and providing that "actual settlers residing on said lands shall be protected in the prior right of purchasing the same to the extent of their settlement, not to exceed one hundred and sixty acres at the price fixed" by the county court not including the value of their improvements extended to all county school lands, but did not operate as a grant to such settlers; and to defend

against a vendee of the county, such settlers are compelled to buy at the price fixed by the commissioners court of the county which owned the land.

4. SAME.—Such right will be protected in favor of an actual settler residing upon the lands against a subsequent purchaser.

5. PARTIES.—A purchaser from a defendant after suit may properly make himself a party defendant in an action of trespass to try title.

APPEAL from Clay.  Tried below before the Hon. B. F. Williams.

This was a suit instituted by the Clay County Land and Cattle Company, on the twenty-fifth day of December, 1884, against J. P. Earle, Daniel Raser, W. J. Wood, Samuel Allison and James Bliss jointly in trespass to try title and for damages to the land in controversy.  The land sued for was part of a four league survey patented to Angelina county on the seventeenth day of July, 1877, for school purposes.

The second amended original petition, upon which plaintiff went to trial in this cause, is in the usual form, charging defendants as being joint trespassers upon the land sued for; and, further, that the land was patented to Angelina county by the State of Texas, and that the plaintiff claimed title thereto by mesne conveyances from and under said county.  That at the time the land was sold by said county, viz: on the twenty-third day of February, 1883, the price of said land as fixed by the commissioners court of said county was two dollars and fifty cents per acre.  Plaintiff prays, first, for the recovery of the land sued for and for damages, and, second, in the alternative, if this relief could not be had, then that the plaintiff recover of defendants the price paid by it and its vendors for the land sued for with interest.  The defendants answered jointly by demurrers and plea of not guilty, and defendant William J. Wood filed a separate plea of disclaimer as to all the land sued for except that portion known as blocks numbers seventy-four and seventy-five.

On the fourteenth day of September, 1886, the defendants filed jointly a motion for severance, alleging that each defendant held under a separate claim, which motion was by the court sustained.  Plaintiff excepted.  On the seventeenth day of September, 1886, the defendant, D. Miller, filed his motion to make himself a co-defendant, which motion alleged in substance that the said Miller had, since the institution of this

suit, purchased from William J. Wood said blocks seventy-four and seventy-five, and that he, Miller, had thereupon become an actual settler thereon.    This motion was by the court sustained.

On the trial the plaintiff introduced in evidence, first, the patents from the State of Texas to Angelina county to four leagues of land, including the land in controversy, dated July 17, 1877.    Second, conveyance to the land in controversy from Angelina county to Eakman & Davidson, dated February 24, 1883.    Third, regular chain of title to said land from Eakman & Davidson, down to plaintiff, all duly acknowledged and recorded, and the last of which was dated July 31, 1883.

Plaintiff also introduced in evidence certified copies of the original field notes, showing thus that the land in controversy was located in the year 1858.    Under the plea of not guilty defendants sought to prove that at the date of the sale by Angelina county to Eakman & Davidson, defendant Wood was and had been for a long time prior thereto an actual settler residing upon said land, and as such claimed the prior right to purchase the land in controversy; they also proved that since the institution of this suit Wood had transferred said land to Miller    Defendants neither by their pleadings nor their proof ever tendered to plaintiff or any one for it the price paid by it and its vendors to the county for the land claimed by defendants.

The evidence of payment on said land, or of any acceptance thereof is contained in the order of the commissioners court of said county, of date November 1, 1880, introduced in evidence by defendants.    This order simply recites that Bonner & Kerr, as agents of the county, had sold to W. J. Wood block seventy-five of one hundred and sixty-four and one-fifth acres, at two dollars per acre, and that the county had received ten dollars thereon, and that this money had been expended in surveying and sub-dividing the said lands.    The order further provided the unpaid purchase money should draw interest at ten per cent per annum from November 1, 1879; that the purchase money should be paid in annual installments of one-tenth, with interest; providing for deeds, notes for purchase money and trust deeds to secure the purchase money.

In September, 1882, Wood, through E. S. Mantooth, made an application to Joseph Herrington, then county judge of Angelina county, to purchase said blocks seventy-four and seventy-five, and tendered to said county judge the amount

necessary to make the first payment on the lands desired. This application was refused because Herrington said he had no authority to sell these lands. In November, 1882, Wood, through Mantooth, applied to the commissioners court of said county to purchase said blocks seventy-four and seventy-five, which contained about three hundred and forty acres, and he then tendered as the first cash payment on said lands the sum of sixty dollars, and demanded a deed therefor. The county refused to sell the lands, and said they intended to raise the price of same and take them off the market. This was done November 21, 1882. No further efforts were ever made by defendants to purchase said lands, and they never at any time tendered to the county or to its authorized agents any security for the deferred payments on same.

Block seventy-four contained about one hundred and seventy-four acres. The improvements made by Miller were upon both lots, and had been made upon a survey made in 1878, for the benefit of the settlers, but it does not seem to have been authorized by the county. No field notes or description of this first survey are shown either in the pleadings or evidence. No offer to buy according to it is in evidence, nor any effort on part of Wood to avail himself of his right to purchase one hundred and sixty acres. His demand through Mantooth was for lots seventy-four and seventy-five, aggregating about three hundred and thirty-eight acres.

Trial was had September, 1886. Verdict for defendant. Judgment recognizing the disclaimer of the defendants, Wood and Miller, as to all the land sued for but lots seventy-four and seventy-five; as to these that plaintiff take nothing. It may be added here that there is nothing in the record, either in pleading or evidence, showing the locality of these lots. They are not described save by number and quantity of acres.

Motion for new trial was overruled and plaintiff appealed. The assignments of error are sufficiently shown in the opinion.

*Plemmons, Hazlewood & Templeton,* for appellant: It was error to allow the defendants to sever after jointly pleading. (Chambers v. Fisk, 15 Texas, 344, and cases cited.)

The title offered by plaintiff was sufficient. (Easterling v. Blythe, 7 Texas, 210–214; Miller v. Alexander, 8 Texas, 36–46; Wright v. Thompson, 14 Texas, 558–561; Secrest v. Jones, 21

Texas, 121–132; Buford v. Gray, 51 Texas, 335; Stephens v. Hicks, 38 Texas, 656.)

The court should have charged upon the legal effect of the instrument of conveyance introduced by the plaintiff.' (Weir v. McGee, 25 Texas Supp., 31, 32; Daughtrey v. Knolle, 44 Texas, 456; Hedgepeth v. Robertson, 18 Texas, 871; Mitchell v. Dewitt, 20 Texas, 294; Teal v. Terrell, 58 Texas, 261; Eason v. Eason, 61 Texas, 225; Hough v. Hill, 47 Texas, 148; Fitch v. Boyer, 51 Texas, 336; Thompson on Charging Jury, 12, 13, 16, 18, 19.) .

*Swan & Bomar,* for appellees.

WALKER, ASSOCIATE JUSTICE. It was not error to allow the defendants to sever, even after they had answered not guilty jointly. The record discloses that no other defendant has any interest in that part of the land sued for claimed by the defendant Wood, nor is there a common defense. (Ballard v. Perry, 28 Texas, 362; Snyder v. Methvin, 60 Texas, 489.)

The case may be disposed of without a specific discussion of the very numerous points made by counsel by passing directly upon the facts in evidence, which determine the rights of the parties. In the testimony there is little conflict.

The plaintiff exhibited a title under a patent to Angelina county to four leagues of school lands, including the land in controversy. The land had been located in 1858, and was patented July 17, 1877. The only link in the chain of plaintiff's title which is attacked by defendants is the conveyance relied upon from the county to Eakman & Davidson, under whom the plaintiff claims. The plaintiff offered in evidence a certified copy of an order of the commissioners court of Angelina county purporting to sell the land, to which the defendants objected, (1) "because it did not sustain the allegation of title in the petition," and (2) "because the instrument is executory and conveys no title, either legal or equitable." Over these objections the order of the commissioners court was read. That a plaintiff may show in evidence a less estate in the land than alleged, is no objection to his proving to the extent he has. Such is not a variance. The order of court in itself recited at great length the different proceedings in reaching the contract of sale with Eakman & Davidson. It provided for the payment of instalments and interest upon the unpaid purchase money. It provided onerous conditions upon the vendees, re-

taining the right upon default in any payment to rescind the contract and resume possession without paying back any of the purchase money; formal possession of the land was given, but the order recited that the "legal and equitable title" was reserved in the county until all the purchase money and interest should be paid. A copy of the order, certified by the county clerk, was to be furnished the vendees as title. It was shown that the vendees and their assigns had paid all the instalments due at maturity and all taxes.

The recital that the "legal and equitable title" was reserved did not and could not destroy the effect of the contract to the extent of the title which the vendees acquired. They obtained possession and had the right of possession. They had a conveyance of the land which could only be defeated by their failure to pay for it as had been stipulated. This title was good against the county until default should be made in the payment; and it was good against any one not showing a better title. It was sufficient to entitle the plaintiff to judgment unless such right should be defeated by the defendants.

It is not considered error that Miller, who purchased Wood's interest while the suit was pending, was permitted to make himself a party defendant and to be heard to assert whatever interest he had in the land sued for. (47 Texas, 188, Jamison v. Halbert.)

The defense relied upon was under article 7, section 6, of the Constitution of the State, on the subject of county school lands, vesting title thereto in the counties, but providing "Actual settlers residing on said lands shall be protected in the prior right of purchasing the same to the extent of their settlement, not to exceed one hundred and sixty acres, at the price fixed by said court, which price shall not include the value of existing improvements made thereon by said settlers."

Wood was a man of family and settled on the land in 1875, and remained until his sale to Miller, after the institution of this suit. One J. P. Earle testified that in 1875 he surveyed the Angelina county school land into one hundred and sixty acre tracts for settlers, and among the surveys one for defendant Wood. The field notes of this survey are not given. It was made without authority from the county. Wood settled upon the tract and made his improvements with reference to it. The county had its school lands subdivided into small surveys in

1878. By this survey Wood's settlement was divided; his dwelling house and part of his field were upon number seventy-five, and the balance of his field, the greater part, on number seventy-four. The two surveys aggregated three hundred and thirty-eight acres.

In 1881 the county judge was sent upon the land to negotiate sales to the actual settlers. He interviewed Wood, but failed to effect a contract with him for the sale of the land.

By an order of the county court, of date November 9, 1880, it appeared that Kerr & Gann, agents of the county, had sold, among many others recited, "to W. J. Wood lot number seventy-five, containing one hundred and sixty-four and one-fifth acres, at two dollars per acre." The order provided for completing the sales; that the unpaid purchase money bear ten per cent interest per annum from November 1, 1879, to be paid in ten annual instalments—notes and trust deeds to be executed by purchasers—deeds to be made them by the county. Nothing further appears to have been done under this contract—nothing more paid nor any papers signed.

In September, 1882, one Montooth, attorney for Wood, applied to the county judge to purchase the lots seventy-four and seventy-five, offering sixty dollars cash as first payment. The judge having no authority, his authority having been withdrawn, declined to act in the matter.

November, 1882, Montooth, agent for Wood, applied to the county court in session to buy the lots seventy-four and seventy-five, again tendering sixty dollars as the first payment. By the county court, in 1879, the price fixed for lot seventy-five was two dollars and of number seventy-four one dollar and seventy-five cents per acre. The county commissioners in open court refused the offer made for Wood, and on the same day the court increased the price asked. The offer by Montooth was under the existing rates when made. Wood never paid taxes upon the land. Before the application by Montooth for Wood the county court had withdrawn the land from sale in small tracts.

An examination of the facts relied upon by Wood shows (1) He seems to have taken no steps to perfect his title by availing himself of the right to purchase the one hundred and sixty acre tract surveyed at his instance in 1875, and upon which he made his improvements; (2) he has done nothing under the order of the county court, of November 9, 1880, towards the

purchase of the lot seventy-five; (3) his offer to buy of the county judge in September, 1882, was not made to an authorized officer or agent of the county; and (4) the offer made November, 1882, to the county commissioners in session was not in terms such as he had a right to insist upon as an actual settler under the Constitution. The court had the right to refuse the offer.

At most, at the institution of this suit Wood only had the bare right to purchase. The county is not shown to be in fault at any time.

From this it would follow (1) That he could defend against the plaintiffs only to the extent of one hundred and sixty acres; (2) that his right to purchase would be subject to some one of the prices fixed; (3) that to defend even to the extent of one hundred and sixty acres, he must avail himself of his constitutional rights as an actual settler by paying the accrued sums and obliging himself to pay the installments not due.

The judgment below must be reversed. Wood may amend and avail himself of his rights by asking affirmative relief by pleading a readiness to complete the purchase of the lot seventy-five, which he seems to have selected. He introduced the order of the commissioners court recognizing his right to it at two dollars per acre for the one hundred and sixty-four and one-fifth acres, upon the terms specified in the order.

To obtain full relief, Angelina county is a necessary party, for Wood should not have title subject to be defeated by the default in the title held by the plaintiff as to the other part of the lands. The plaintiff should also be relieved pro tanto in his contract against the county.

Wood should tender the accrued payments, with all stipulated interest from the date specified in the order, and furnish obligation for the payment of such, if any, installments which may still be unpaid. Reasonably, the first installment should be at the date of the order, the payment of ten dollars to be credited upon the first or cash payment.

It is held that the right secured to actual settlers by the Constitution affected *all* the school lands owned or to be acquired by the counties under the donation from the State to the counties for school purposes.

The defendant Miller shows no right to or in the land. His vendor could pass no title; nor has either offered to perform

the acts without which his claim would have no legal effect. The Constitution did not grant the land—only the right to acquire it upon terms to be fixed by the counties; the land must be paid for. It is not held that, upon Wood acquiring title, as between Wood and Miller, the latter may not acquire the benefit of such purchase.

*Reversed and remanded.*

Opinion delivered October 16, 1888.