**WILLIAMS v. MOERS et al.**

No. 12274.

Court of Civil Appeals of Texas.
Galveston.
May 10, 1951.

Rehearing Denied May 31, 1951.

Geo. Red and Henry P. Giessel, both of Houston, for appellant.

Fulbright, Crooker, Freeman & Bates, John M. Jamison and Quentin Bates, all of Houston, for Katherine H. Moers.

Archie D. Gray and Fred Lange, both of Houston, for Gulf Oil Corp.

Lawler & Childress, of Houston, for Minnie Pettit.

CODY, Justice.

This is an appeal from a judgment rendered in the severed part of a boundary suit. The original suit was instituted by appellant December 1, 1948, under the style B. F. Williams v. Carjeff Building Company, numbered 361,424 on the Court docket. B. F. Williams is the owner of the record title to the south 100 feet of Lot 12 in Block 365, S.S.B.B., City of Houston, whereas the Carjeff Building Company is the owner of the record title of Lot 6 and the adjoining 5 feet of Lot 7 in said block. Lot 12 is a key lot and its west line coincides with the east line of Lots 6 and 7.—We append to this opinion two figures showing the plat of Block 365, the reason for showing two figures of the block will hereafter appear. Unless otherwise stated, the reference to the plat is to Figure 1.

Figure 1.

Figure 2.

On March 23, 1949, appellant filed his first amended original petition and in it he repeated his allegations as against the original defendant, which allegations in form sought to recover the title and possession to a strip of land 4 feet wide by 55 feet long, being the strip of land which was in dispute between appellant and the Building Company. But appellant, by his amended petition, in the alternative sued the owners of the record title to Lots 1 and 2 which adjoined appellant's south 100 feet on the east. As against appellant's eastern neighbors appellant sued to recover title and possession to a strip of land 4 feet wide by 100 feet long. The manifest purpose of appellant making his eastern neighbors parties defendant to his boundary suit against his western neighbor was to try the question of boundary against both sets of neighbors so that if the jury should find that the true boundary line was located so as to disclose that the record title to the land in dispute on appellant's west was in Lot 6 and the adjoining 5 feet of Lot 7 that the same location would fix his eastern line 4 feet farther east and would show that appellant's eastern neighbors were encroaching upon Lot 12 to the extent of 4 feet. Katherine H. Moers was the agreed owner of the record title to Lot 1, subject to a lease to the Gulf Oil Corporation, and Minnie Pettit was the agreed owner of the record title to Lot 2.

Thereafter appellant's eastern neighbors filed their answers, Mrs. Moers, owner of Lot 1, disclaimed any claim to the land sued for except Lot 1.

Thereafter on June 2, 1950, Mrs. Moers filed a motion to sever the alternative suit of appellant against her from the original suit of appellant against the Building Company. The grounds of the motion were, (1) That the suits involved the title and possession to separate and distinct tracts, and (2) That by the pleadings of the parties the issue of title by adverse possession of the two different and separate tracts was involved, and that she had no concern with the strip 4 x 55 feet, and unless the suit was severed the trial of the different issues as to limitations and as to titles to the separate and distinct tracts would impose unnecessary and unjust burdens on her, etc.

The Court granted the motion to sever and ordered the original cause to remain on the docket with its original number, and the suit as against Katherine H. Moers et al. (the owners of Lots 1 and 2 and the lessee of Lot 1) to take the new style of B. F. Williams v. Katherine H. Moers et al., and the new docket number of 361,424–A, and ordered the parties to replead in order to carry such severance into effect.

Appellant preserved his exception to such interlocutory order. Appellant seasonably complied with the order of severance and filed his second original petitions in the severed suits. Upon the call of the docket appellant announced ready. In the original suit the Building Company urged a motion for continuance for the term, which was granted. The defendants in the severed suit and their attorney were not present at the call of the docket and were ordered to trial by the Court. It appears from the record that the defendants in the severed suit had failed to replead and file their answer under a new style and docket number but the parties proceeded to trial and trial was had as upon the answer which had been filed by said defendants before severance was ordered.

At the conclusion of the evidence motions for directed verdicts were refused and after verdict plaintiff presented his motion for judgment notwithstanding the verdict which was regularly heard and overruled.

The effect of the verdict was to fix the location of the boundary line between Lot 12 and Lots 1 & 2 at a point on the ground which established that the strip in dispute between appellant and his eastern neighbors formed a part of Lots 1 and 2 and formed no part of Lot 12. (Appellant had also sued the warrantors of his title to the south 100 feet of Lot 12.) The substance of the judgment, in addition to fixing the true location of the lot line upon the ground so as to establish that the strip 4 x 100 feet was within Lots 1 and 2 was that appellant go hence without day. Hereafter the defendants in the severed suits will be referred to as appellees.

Appellant predicates his appeal upon 27 points. His points I–IX seek to have the judgment reversed and rendered. His points X–XXVII seek to have the cause remanded for a new trial.

Block 365, S. S. B. B., is a part of the original townsite of the City of Houston. The Allen Brothers, as real estate promoters, conceived the idea of founding a city on Buffalo Bayou and laid out the townsite in the early days of the Republic of Texas. The lots and blocks of the original townsite which are on the south side of the Bayou were shown upon the plat as lots and blocks, South Side Buffalo Bayou.

The fate of the original plat is not disclosed by the evidence. The evidence does show that ancient maps of the City of Houston are still extant. The Borden map is kept in the vaults of the City of Houston, copies of which may be had. The "Map of the City by W. D. Woods, C. E." is in the tax collector's office of Harris County and is dated "1–1–'69" and it bears the legend "Scale 360 feet equals 1 inch" and "Original Plat of Houston certified by the Mayor and Council after survey made by E. S. Pheret, of Canal Street, New Orleans, and signed as approved and adopted by the City Council as per Resolution 94, signed A. MacDougal and the Mayor and Council."—It was the Woods map which was the basis of the resurveys introduced in evidence on the trial of this case. Neither the Woods map nor a copy of it was introduced in evidence.

The inference from the record in this case is that it is unknown whether Block 365, S. S. B. B., was actually established on the ground and the lots therein set off or whether the block and lots were the result of an office survey. We further infer that in "South Side of Buffalo Bayou" variations have developed during the years between the theoretical location of the street lines, block lines and lot lines, and the lines as established by occupancy. In an effort to harmonize the occupancy with the theoretical lines as much as possible and bring about harmony, the City of Houston, or the office of the City Engineer, has undertaken to establish city reference lines. These reference lines are tied to various landmarks or monuments deemed to be well established. The reference lines are located as the center of certain streets. We do not understand that these reference lines harmonize exactly with the lines of occupancy, or with each other.

In preparation for the suit prior to the severance and doubtless prior to the filing of the original suit, appellant caused a re-survey to be made as a result of which his surveyor located his west boundary line at a point which would include the 4 x 55 feet strip in the south 100 feet of Lot 12. Before appellees filed their motion for severance appellant's attorneys courteously acceded to the request of appellees' attorneys to furnish them with a copy of their survey. After the motion for severance had been sustained appellant found it necessary to find a new reference line, one which he deemed tied to a more correctly located monument which would fix his eastern boundary line 4 feet farther east than he had alleged it to be, except in the alternative, in the original suit. Appellees make all possible capital out of this change, and some merriment, but, in our opinion, without just cause to do so as we shall hereafter show.

Appellees also procured a resurvey for the purpose of locating the west line of their lots so as to coincide with the points at which their occupancy placed it.

In substance, appellees' resurvey was the same as the resurvey appellant had prior to the Court's order of severance.

The evidence in this case disclosed that the occupancy of all of Block 365 was consistent with the lot lines being located as they were established by appellant's original resurvey, with the exception of the occupancy of Lot 6 and the adjoining 5 feet of Lot 7. In 1945 the owner of said last-mentioned property erected a masonry-constructed building which, together with the drainage pipe, encroached upon what appellant then deemed to be his west boundary to the extent of 4 feet (actually 3.8 feet). In this connection appellees introduced evidence over appellant's strong objection that years ago appellant acquired the

record title to Lot 3 and the adjoining portions of the north 25 feet of Lot 12 and the south 25 feet of Lot 11, which property was in a rectangular shape, and included all of Lot 3 and enough of the north 25 feet of Lot 12 and the south 25 feet of Lot 11 to have the dimensions of 50 feet by approximately 139 feet. The evidence showed that appellant was in occupancy of this property consistent with the occupation of all of the remainder of the block except the occupation of Lot 6 and the adjoining 5 feet of Lot 7. Upon cross-examination appellant's surveyor testified, over appellant's objection, that in his opinion the north 150 feet of Block 365 should conform to the lines of occupation but that the south 100 feet should be shifted to the east 4 feet so as to have the result depicted by Figure 2 of Block 365. This shift would allow appellant to make up his shortage of the width of his lot out of the westernmost 4 feet being occupied by appellees and would push appellees out into what appellees deem to be property of the City of Houston located within Austin Street.

In answer to special issues the jury found (1) That the 4 x 100 foot strip is not a part of Lot 12, (4) That the east line of Lot 12 passes through the concrete building on Lot 3 (which had belonged to and been occupied by appellant for years) is a part of Lot 12, (5) That the west line of Lot 1 is 140 feet west of the City reference line on Austin Street (In answer to special issue No. 6 the jury made the same finding with reference to the west line of Lot 2 as they made in answer to special issue No. 5 in reference to the west line of Lot 1), (7) That the southeast corner of Lot 12 is 190 feet from the City of Houston reference line in Caroline Street, (8) That the east line of Block 365 fronting on Austin Street is 40 feet west of the City reference line on Austin Street.

There was sufficient evidence to sustain the answers of the jury to the special issues reflected by the foregoing findings. The nature of the evidence consisted of resurveys and old occupancy and with respect to the sufficiency of such evidence to establish boundary lines the correct rule is stated in Ballard v. Stanolind Oil & Gas Company, 5 Cir., 80 F.2d 588, 590, where the Court said, "The purpose of a resurvey is to trace the footsteps of the original surveyor. When the marks of his footsteps are found, they control. When they cannot be found, old use and occupancy, old recognition, must suffice." And what the Court there said next is equally applicable here. "Neither the evidence of plaintiff nor that of defendant reconciles all of the original calls. The evidence of each was fairly consistent with the theories each adopted."

The one stable and unalterable fact in this case is that appellant is the owner of the record title to the south 100 feet of Lot 12, in virtue of which ownership he is entitled to occupy a portion of Lot 12, having a frontage on Jefferson Avenue of 50 feet, and a depth of 100 feet. But the undisputed fact is that appellant's occupancy is now confined to a frontage of 46 feet. Absent any question of limitation (and the parties withdrew any issues as to acquisition of title by adverse possession before the case was submitted to the jury), appellant is entitled as a matter of law to have his east and west boundaries located on the ground so as to make his occupancy correspond to his legal title, giving him a frontage of 50 feet on Jefferson Avenue.— The same evidence, which would establish the Building Company was encroaching on the west of Lot 12 by 4 feet, would establish that the owners of Lots 1 and 2 were not encroaching. That is, this result would be established if appellant were allowed to try the issue of boundary in the same judicial proceeding against his western neighbor and his eastern neighbors.

It is not literally true, as appellees' motion for severance claimed, and as the trial court found, that appellant, by his first amended original petition, sought to try the title to two separate and independent tracts in one suit. Appellant asserted no right to recover the title to and right of possession of both the 4 x 55 foot strip and the 4 x 100 foot strip from his eastern neighbors in the same suit. To the contrary, appellant at no time sought to establish a claim to more than a frontage of 50 feet on Jefferson Avenue. It was the

gist of appellant's action that he did not know on which side of his property his shortage of 4 feet frontage existed, that if it did not exist on the west, then it existed on the east, and that the Building Company was in possession of 4 feet of his frontage, but if not, then appellees were.

The truth is that, prior to the severance, appellant was urging one suit against the Building Company, to recover one tract of land from the Building Company, and a separate suit, in the alternative, and only in case appellant failed to recover from the Building Company, to recover the title to a separate and distinct, but not an independent tract. If this were not otherwise self-evident, the fact that the same answers which had been filed by appellees in the unsevered suit served, without amendment or physical transfer to the papers filed in the severed suit, as the answer to every allegation urged by appellant in the severed suit.

It may be true, though it is not necessarily so, that appellees would be put to some additional expense and burden, by reason of having appellant urge his boundary suit in one trial, first against the Building Company, and in the alternative against appellees. But it could only be such a burden as is imposed in every trial of suits properly brought primarily against one defendant, and secondarily against another defendant.

As indicated above, the motion for severance in this case was filed by Mrs. Moers long after the time for filing a dilatory plea (such as a plea in abatement because of misjoinder of causes of action) had passed. But it has been settled by the Supreme Court, that, in a trespass to try title case, a motion to sever because of misjoinder of causes of action, does not come too late, though it is filed after a defendant has answered to the merits. Ballard v. Perry's Adm'r, 28 Tex. 348. The Court also held in that case "The causes of action presented in the petition are in the main distinct and several as to the different defendants. In addition to this, the appellant, though claiming under a common source of title with his co-defendants, also claimed independently of them an interest in the land, under the title asserted to it by plaintiff."—It cannot be denied that, before severance, the causes of action presented in appellant's petition were distinct and several as to the different defendants, and as to different tracts. But the claim of appellant to own the 4 x 100 foot strip, in case it were judicially determined that he did not own the 4 x 55 foot strip, was not independent of his claim asserted against the Building Company, but alternatively. Such claim was so far from being independent that the same evidence which would establish that appellant did not own the 4 x 55 foot strip (if presented in the same judicial proceeding) would establish as a matter of law that appellant did in fact own (because of the location of the boundary) the 4 x 100 foot strip.

The holding made in the Perry case, supra, was followed in Snider v. Methvin, 60 Tex. 487, and in Clay County Land and Cattle Company v. Wood, 71 Tex. 460, 9 S.W. 340. It is clearly indicated by the Supreme Court that it will not now depart from the rule established in the Perry case. It is therefore now the settled law of this State that a motion to sever made by a defendant in a trespass to try title case, because of misjoinder of causes of action, does not come too late, though made after the defendant has answered to the merits. It is equally well established by said cases that where the causes of action asserted by the plaintiff in his petition are in the main distinct and several as to the different defendants, the trial court may, and in some cases must, grant a severance.

The rule in the Perry case was not applied to a situation such as this. Here it is obvious that appellant is entitled to recover either against appellees or the Building Company, but that, if he is compelled to sever, he is put in grave danger of losing in each severed case. But would necessarily recover in a suit to which the several defendants were parties, because by law he is entitled to. Had the order of severance established that the only rea-

son for granting it was that the Court felt bound by the rule in the Perry case, we would not hesitate to hold the severance constituted reversible error. However, the Court has a broad discretion to act with respect to the joinder of actions. It is not enough that we cannot see how the Court's exercise of discretion can be justified. We must be able to see that it cannot be justified. In the absence of the evidence taken upon the motion for severance, we cannot say there was an abuse of the Court's discretion, which will require a reversal.

Appellant's very able brief does not comply with Section (b) of Rule 418 in that the points were not stated so as to be placed on a single page of his brief. His large number of very concisely stated points cover so much subject matter that it is impossible to discuss these points separately. We have considered them and rule that no reversible error is presented.

The judgment of the trial court must be affirmed.