### ANCHOR CAS. CO. v. CHIA.

No. 2976.

Court of Civil Appeals of Texas. Eastland.

Jan. 23, 1953.

Rehearing Denied Feb. 20, 1953.

Smith, Eplen, Bickley & Pope, Abilene, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, for appellee.

GRISSOM, Chief Justice.

This is a Workmen's Compensation case. The employee recovered judgment against his employer's insurance carrier and it has appealed.

The twelfth issue was:

"Do you find from a preponderance of the evidence that C. M. Chia had good cause for failure to file his claim sooner than he actually filed the same?"

The jury answered "Yes."

Appellant contends that in so submitting the issue of good cause and in overruling appellant's motions for a directed verdict and for judgment notwithstanding the verdict the court committed reversible error because this was not a submission of the ultimate issue of good cause nor any element thereof. Appellant further contends that the evidence was insufficient to support a finding of the existence of good cause because there was no evidence of

316

probative force that any one promised claimant they would file his claim and that he relied thereon; that a claimant who has not filed his claim for compensation within six months after an injury must allege and prove the facts that constitute good cause for such failure and that there was neither evidence nor a finding of such facts, as distinguished from a legal conclusion. Appellant further contends the court erred in refusing to hold that no controlling fact issue relative to good cause was submitted and that, therefore, the court was without power to make such a finding and enter judgment for claimant.

The only objection to the submission of issue Twelve was that "the record of the evidence in this case is wholly void of any proof of probative force sufficient to show that any one promised plaintiff that they would file his claim before the Industrial Accident Board for him, and such evidence is wholly insufficient to show that he relied upon any such promise by anybody, and the failure to so file such claim was due wholly to his own negligence." This was merely an objection to the submission of an issue of good cause. It was not an objection to the manner in which this issue was submitted. In connection with issue Twelve, appellant requested the court to instruct the jury that "* * * 'good cause' as used in this charge is such cause as would be considered a reasonable excuse by a man of ordinary prudence reasonably mindful of his own interest under the same or similar circumstances." The requested instruction was given. The court defined good cause exactly as appellant requested that it be defined. In Texas Employers' Ins. Ass'n v. Frankum, 148 Tex. 95, 220 S. W.2d 449, 451, the judgment was reversed because the court submitted the issue of good cause in substantially the same manner as it was here submitted and also refused appellant's request to limit the jury to a consideration of the facts alleged and proved as constituting good cause in determining that issue. But such submission was there specifically objected to because the court did not limit the jury to a consideration of the facts alleged and proved in determining whether good cause existed.

Had such objection been made to issue Twelve, the court probably would have so limited the consideration of the jury. But here there was no request to so limit the consideration of the jury and there was no objection to the manner good cause was submitted; the objection simply was that no issue of good cause should be submitted. Whether the issue was correct or not, appellant only objected to its submission because of the alleged insufficiency of the evidence to support a finding that any one promised to file appellee's claim and that he relied on such a promise. The objection appears to assume that the substance of the issue submitted was whether any one promised to file the claim and appellee relied thereon and complains of the issue only because there was no evidence, or insufficient evidence, thereof. This was not an objection to a failure to submit the question whether any one promised to file the claim and appellee relied thereon.

Claimant alleged he was a Mexican and spoke poor English; that he could neither read nor write; that he had worked for his employers for more than twenty years and had always depended upon them to handle such matters for him. He alleged that one of his employers, when claimant told him in detail about the accident, told claimant he would take care of his claim for compensation. There was sufficient evidence to sustain such allegations. Claimant testified that soon after he was hurt he reported the accident to Mr. Fulwiler, one of his employers, and Mr. Birmingham, the latter being in charge of the insurance department of the employers. He testified that they told him they were going to take care of the insurance papers; that they told him they would file all necessary papers for him; that he believed them; that he had been working for said employers for twenty years; that in all of claimant's affairs that required writing, the payment of taxes, and the like, the employers had handled it for him; that he could not read and could only write his name; that he believed and relied on the promise to file his claim and that he did not discover that it had not been filed by his employers until he went to his lawyer; that when it

was discovered he immediately filed his claim.

He testified that the next morning after he was hurt his wife called Mr. Fulwiler and told him of the accident; that claimant talked to Mr. Fulwiler about three days later; that Mr. Birmingham was present and claimant talked to both of them at the same time and that Mr. Fulwiler told him he would have Mr. Birmingham file his papers; that Mr. Birmingham was present and told claimant he was going to "fill up a claim." Mr. Birmingham testified that the reason the claim for compensation was not filed prior to December 13th was that he was the one who "would" have done it "and he didn't do it." He further testified:

"Q. Did you have any conversation with Mr. Chia in which you told him you would look after it for him? A. Yes, sir, I did.

"Q. What did you tell him? A. I will put it in this manner—Chia places his confidence pretty much in the people here in the office and things like this would come up and do come up, and he just assumes that we will take care of it for him. I just told him that whenever I needed him to sign anything I would get in touch with him.

"Q. I know, but with reference to this claim to be filed before the Industrial Accident Board, did you tell him that you would file the claim? A. As such, I couldn't say that I told him I would file his claim for him, but as a general thing I would take care of it for him.

"Q. But can you give me the exact words that you said to Mr. Chia? A. Well, those are about the words, Mr. Eplen, I just said to him—you just go on and I will handle everything for you."

■ From a study of all the relevant testimony, we conclude that there was sufficient evidence that claimant's employer promised to file Chia's claim and he relied thereon; that, under the circumstances, reasonable minds could differ as to wheth-

er or not same constituted good cause. It is not important whether the employer, Fulwiler, in agreeing to file the claim, said he would do it personally or have Birmingham file it. If appellant had objected to all testimony that did not come within the fact alleged to show good cause we must assume such objections would have been sustained or claimant would have amended his pleadings to conform strictly with the proof. We do not believe that the asserted errors relative to submission of good cause constitute reversible error. All of said points are overruled.

Appellant's sixth point is that the court did not have jurisdiction of this case because claimant sought recovery of compensation based on a different injury than the one passed on by the Industrial Accident Board. Appellant contends the evidence conclusively shows the incapacity claimed before the Board was caused by a different injury than the one that was the basis of recovery in the trial court. To support said conclusion, appellant calls attention to the employer's supplemental report of injury dated November 5, 1951, in which the employer stated the date of the injury was May 15, 1951. Claimant's notice of injury stated he was injured at 11:00 o'clock a. m. on May 15, 1951, on the Fulwiler Ranch, describing its location, and the cause of the injury was stated as follows: "He was lifting iron pipe and strained back." This was dated December 13, 1951. Claimant's claim for compensation recited that the time of injury was 11:00 o'clock a. m. on the 15th day of May, 1951, on the Fulwiler Ranch, describing its location in Taylor County, and the cause of injury was stated in the same manner as in the notice. Appellant further calls attention to a statement of Mr. Vicars, who was working with claimant at the time of the alleged injury for which he recovered judgment. This statement was made on September 14, 1951. He said he did not remember the date nor the day of the week when he was overseeing the construction of a pier at the Fulwiler Ranch; that at one time Chia picked up a joint of pipe and when they set the pipe down he did not straighten up; that Chia walked off and

sat down and did not work for the next few days. In said statement to an insurance adjuster Vicars said that on May 15, 1951, he and Chia were working on a spill way on the Fulwiler Ranch when Chia hurt his back again. "We were using old broken up concrete for this work." "We had backed the truck to the pile of blocks and he was standing upon the pile and when he started to put one of the blocks in the truck one of the blocks beneath him turned and jerked his back." He stated that when Chia picked up a large piece of concrete another piece of concrete he was standing on wobbled under his feet and he "hurt his back again;" that for three or four weeks following this second accident Chia did not return to work; that he later started doing light work, such as janitor work, and had not resumed regular maintainance work. The award made by the Board in March, 1952, does not show the Board's finding as to the cause of Chia's injury but does state he sustained an injury on May 15, 1951. From the foregoing appellant concludes, and forcefully argues, that, although it is not attacking the jury's finding that claimant sustained an injury on May 3, 1951, while lifting a piece of concrete, it is conclusively shown the Board passed upon one injury and the court upon another.

On the trial Vicars testified in detail as to the injuries suffered by Chia. He testified he had seen him hurt his back a time or two. He testified that he was with him in 1948 or 1949 when they were building a boat dock for 'Mr. Fulwiler and Chia was lifting some iron pipe; that they had to carry the pipe and lift it pretty high; that Chia had too much of a load; that he could tell by the expression on Chia's face that he had hurt himself; that Chia might have quit work for three or four days on that occasion; that he was also with him in May, 1951, when they were loading blocks of broken concrete and putting them in a truck; that Chia reached down and picked up a large block and started to put it in the truck; that the block Chia was standing on turned under his feet and he sustained an injury to his back; that this was

near the first of May, 1951; that he made a statement in September, 1951; that he told the person taking the statement, which recited that the accident happened on May 15, 1951, that it happened somewhere around that date; that May 15th was already written into the statement when it was presented to Vicars; that the person to whom he made the statement was investigating for appellant in September, 1951; that the statement was written out by the insurance adjustor but signed by Vicars and appellant knew all about it on September 14th, about four months after Chia got hurt while putting concrete blocks in a truck.

Claimant testified as to the manner in which he suffered the injury for which he recovered compensation, as follows:

"A. We loaded a truck with concrete chunks and it was a little bit too far, the truck already, and I lifted one pretty heavy and when I started throwing one on it one of those I was standing on rolled off me and put my feet back and then I couldn't throw that concrete on the truck and just put my hands on the truck, that way (demonstrating) saving it to roll back to me."

He testified that the next day he went to Dr. Hamilton, who wrote a prescription for him to ease the pain and told him to come back about two weeks later for X-ray pictures. Chia produced the bottle with the date of this prescription shown to be May 4, 1951. He said, in effect, that he then knew that the injury for which he was seeking compensation was suffered on May 3, 1951, because the day following that injury Dr. Hamilton wrote the prescription for medicine to ease his pain. The label on the bottle showing said date was introduced in evidence. He testified that he did not tell his lawyer the first time he saw him about the bottle and that he then could not remember the exact date of said injury; that he talked to the lawyer in December, 1951, about his injury on May 3, 1951; that he returned to Dr. Hamilton of Abilene about two weeks after receiving the prescription and the doctor took some

X-ray pictures; that Dr. Hamilton then put a brace on him, which he had been wearing ever since that date, and sent him to Dr. Hooks, a bone specialist in Abilene; that Hooks advised an operation; that he went to see Hooks under appellant's instructions. That after seeing Dr. Hooks he returned to Hamilton, who continued to treat him and give him medicine, and then he went to see Drs. Snow, Cash and Schultz. It was admitted that he went to three of said doctors at the request of appellant; that the next day after he was injured in May, 1951, his wife reported his injury to his employer and three days later he talked to his employer personally about the injury; that when he was injured in 1949 he quit work for about two days and Dr. Hamilton treated him on that occasion; that his office was 618 Cedar Street in Abilene; that he was injured in 1949 by lifting pipe; that no X-rays were made after his 1949 injury and that the next time he saw Dr. Hamilton was after he was hurt in May, 1951. The reason he went to see him then was because he got him well the first time. Claimant was cross-examined by appellant's counsel with reference to his statement in an oral deposition about the last accident happening on May 15, 1951. He testified that he told appellant's counsel that he did not know what day it was because he couldn't remember; that when he found the bottle with the prescription dated May 4, 1951, he then knew the date he was injured while lifting concrete blocks.

There are other discrepancies in the testimony of the witnesses and there could be pointed out further evidence of two distinct and separate injuries occurring while working for the same employer, the first occurring in 1949 while Chia was lifting pipe and the second on May 3, 1951 while claimant was loading a truck with concrete blocks. It is evident from the already too lengthy recital of the testimony that the truth or falsity of claimant's statement with reference to the time and the manner he suffered the injury on May 3, 1951 can be checked on from many sources. There was no claim that appellant was surprised by proof of the injury of May 3, 1951, as distinguished from that of 1949.

In claimant's amended petition he alleged he was injured on May 3, 1951 while loading a truck with large pieces of concrete when another piece of concrete on which he was standing rolled under his feet and caused him to slip and strain his back. Appellant answered that Chia suffered no injury on May 3, 1951; but, if mistaken, that Chia suffered an injury to his back from lifting an iron pipe in 1949 and in notices and claims presented to the Board he had stated he was hurt by lifting an iron pipe, and appellant alleged, that said previous injury (1949) resulted in a condition of incapacity which, together with the one suffered on May 3, 1951, if he then suffered an injury, contributed to his present incapacity; that all of claimant's present incapacity was due to the 1949 injury or, if mistaken in that respect, that not more than ten percent of his present incapacity was due to the injury of May 3, 1951.

The jury found Chia suffered an injury on May 3, 1951 by attempting to lift a block of concrete onto a truck and that such injury was a producing cause of his incapacity. The jury also found that Chia sustained an injury to his back in 1949 as a result of lifting pipe but that Chia's present incapacity was due solely to the injury of May 3, 1951.

We are indebted to appellant's counsel for an excellent brief but we are convinced the record does not conclusively show that the claim for compensation presented to the Board and the claim before the Court were based on different injuries. In Gulf Casualty Co. v. Tucker, Tex.Civ.App., 201 S.W.2d 81, it was held that a court is not deprived of jurisdiction to adjudicate a claim for compensation merely because it is shown that the injury occurred in a different place and in a different manner than stated in the claim presented to the Industrial Accident Board. Although the facts in Texas Employers Ins. Ass'n v. Patterson, Tex.Civ.App., 231 S.W. 2d 898, 900 (Writ Ref.), were more favorable to the employee than the facts of

this case, we think said decision is applicable here. In Maryland Casualty Co. v. Jackson, Tex.Civ.App., 139 S.W.2d 631, (D.J.C.) it was held that the only essential jurisdictional connection between the claim before the Board and the Court is the identity of the injury of which complaint is made. It was not conclusively shown that different injuries were asserted before the Board and the Court.

After reading all of claimant's testimony, which discloses that he is of foreign extraction and does not have an adequate command of the English language, one could readily conclude that when claimant's counsel prepared his notice of injury and claim for compensation, Counsel was confused as to whether it was the 1949 or 1951 injury that was caused by lifting a pipe and that claimant did not then know the day in May, 1951, when he sustained the second injury and was not able to fix the exact day until he noticed May 4, 1951 on the medicine bottle. Point six is overruled.

Appellant contends the court abused its discretion in refusing to permit appellant to file a cross-action against Chia's employer, Security Investment Company. In such cross-action appellant sought to recover from Security Investment Company the amount Chia might recover against it. The cross-action was based on the theory that Security Investment Company, appellant's agent, had perpetrated a fraud on appellant by promising to file Chia's claim and not reporting all the facts to appellant. We have carefully considered the contention and have concluded that this was a matter within the discretion of the court and that it is not shown to have been abused. Williams v. Moers, Tex.Civ. App., 240 S.W.2d 336, 342 (RNRE); Hudson Underwriters Agency of Franklin Fire Ins. Co. v. Ablon, Tex.Civ.App., 203 S.W.2d 584, 585 (W.D.); McGee v. McGee, Tex.Civ.App., 237 S.W.2d 778, 782 (RNRE); Waller Peanut Co. v. Lee County Peanut Co., Tex.Civ.App., 217 S.W.2d 183, 185; Simmons v. Wilson, Tex.Civ. App., 216 S.W.2d 847, 854.

The judgment is affirmed.